## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID BLUE,                                )
                                           )
        Plaintiff,                         )
                                           )
v.                                         )        No. 24-cv-2579-JPG
                                           )
THOMAS ("T.J.") WARREN, SCOTT              )
MORSE; LISA BLUE; ROSE GRUNDY;             )
VERETTA GARNETT; LEAH BROWN;               )        JURY TRIAL DEMANDED
ELAINA SCERENA; THERESA EYTALIS;           )
LISA IRVIN; MICHELLE SCHAFER;              )
CITY OF MARION; WILLIAMSON                 )
COUNTY STATE'S ATTORNEY,                   )
                                           )
        Defendants.                        )

## DEFENDANTS LEAH BROWN AND ELAINA SCERENA'S MOTION AND MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COMES, Defendants LEAH BROWN and ELAINA SCERENA, by and through their undersigned counsel, Wiedner & McAuliffe, Ltd., and for their Memorandum in Support of their Motion to Dismiss Plaintiff's First Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).

## INTRODUCTION

Plaintiff, DAVID BLUE, filed a twelve-count amended complaint for compensatory damages, costs, and attorneys' fees against all twelve, named Defendants and punitive damages against each of the individual defendants in their individual capacities. (*See* Doc. 3). Throughout the First Amended Complaint ("Complaint"), Plaintiff refers to the "DCFS Defendants." At no point does the Complaint define who is considered a "DCFS Defendant." The closest the Complaint comes is stating "At all relevant times, Defendant Grundy, Garnett, Brown, and Scerena, were employed by the Illinois Department and Children Family Services ("DCFS")." (Doc. 3, ¶ 19). As the Complaint alleges, there are four Defendants who were employees of DCFS,

it is unclear in several instances who/how many of four the "DCFS Defendants" the allegation is being alleged against. At other points, such as in Count IX, the claim is being alleged against "the Defendants" without any indication of which of the twelve named Defendants are being implicated. (*See Id.*, ¶ 137; *cf. Id.*, ¶¶ 121, 132).

Assuming arguendo that Defendants Brown and Scerena are intended to be included in the terms "DCFS Defendants" and counts where the parties are simply referred to as "the Defendants", the Complaint alleges nine counts against Defendants Brown and Scerena.[1] The first four counts are federal 42 U.S.C. § 1983 claims: fabrication of evidence (Count I); malicious prosecution and unlawful detention (Count III); conspiracy to violate constitutional rights (Count IV); and failure to intervene (Count V). (*See id.*). The other four counts are state (presumably Illinois) claims: malicious prosecution (Count VI); civil conspiracy (Count VII); intentional infliction of emotional distress (Count VIII); willful and wanton conduct (Count IX); and parental alienation (Count X). (*See id.*). For the reasons articulated below, these claims must be dismissed against Defendants Brown and Scerena as based on the facts plead: (1) Brown and Scerena are entitled to sovereign immunity; and (2) Plaintiff failed to state claims upon which relief can be granted.

## **LEGAL STANDARD**

On a motion to dismiss, the factual allegations of the complaint are taken as true, and all reasonable inferences therefrom are drawn in favor of the plaintiff. *Bell v. City of Chicago*, 835

---

[1] Defendants Brown and Scerena note that none of these nine counts explicitly name Brown or Scerena. Instead, Counts I, III, IV, V, VI, VII, VIII, IX, and X are alleged against the "DCFS Defendants." As Paragraph 19 appears to establish that there are four Defendants employed by DCFS, for the purposes of this motion, it appears "DCFS Defendants" is meant to refer to Defendants Grundy, Garnett, Brown, and/or Scerena. (*See* Doc. 3, ¶ 19). However, in Counts I, III, IV, V, VI, VII, VIII, IX, and X, it remains unclear if all or some of the four alleged DCFS employees are meant by "DCFS Defendants" in each of those counts. For the purposes of this motion, Defendants Brown and Scerena are assuming they are included as Defendants in Counts I, III, IV, V, VI, VII, VIII, IX, and X. This assumption is not to be taken as an admission as Defendants Brown and Scerena expressly deny the allegations contained in Plaintiff's First Amended Complaint.

F.3d 736, 738 (7th Cir. 2016). Under Rule 12(b)(6), the complaint must put the defendants on "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must state a claim for relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sloan v. Am. Brain Tumor Ass'n.,* 901 F.3d 891, 894 (7th Cir. 2018). "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012).

## <u>STATEMENT OF FACTS</u>

Plaintiff brings his twelve-count Complaint against several Defendants arising from the allegedly wrongful investigation, charges, prosecution, and conviction of Plaintiff for allegations that he sexually abused his 12-year-old adopted daughter N.B. (Doc. 3, ¶ 1). The Complaint alleges N.B. is an intellectually and cognitively delayed child who was highly suggestible and had a history of sexual abuse prior to being adopted by Plaintiff and his then-wife, Defendant Blue. (*Id.*) The Complaint alleges that the Illinois Department and Children Family Services ("DCFS") was aware that N.B. had been sexually abused prior to placement with the Blues and documented that prior sexual abuse. (*Id.*, ¶ 34).

On October 28, 2019, Defendant Blue went to the Marion Police Department and allegedly falsely reported to the Officer Defendants (presumably Defendants Warren and Morse) that N.B. had disclosed to Defendant Blue that Plaintiff had sexually abused N.B. (*Id.*, ¶ 40). Defendant Warren reported the complaint to DCFS and arranged to interview Defendant Blue and N.B. with

DCFS investigator, Defendant Grundy, who was the DCFS investigator that was assigned to the DCFS investigation and to assist the Marion Police Department. (*Id.*, ¶ 41). Defendants Warren and Grundy interviewed N.B. and Defendant Blue at the Marion Police Department. (*Id.*, ¶ 42). The Complaint alleges that in her interview, N.B. denied any sexual abuse by her father, and that while she complained that she did not want to go to her father's house, she denied Plaintiff had touched her in an inappropriate sexual way. (*Id.*, ¶ 44).

After the interview, Defendants Warren and Grundy explained to Defendant Blue that N.B. would be interviewed by a forensic interviewer and allegedly told Defendant Blue to practice a story with N.B. that N.B. could repeat to the interviewer. (*Id.*, ¶ 47). The Complaint alleges Defendants Warren, Grundy, and Blue crafted a false narrative that Plaintiff forced N.B. to commit an act of oral sex in order to be consistent with the lack of physical evidence that Defendant Blue planned to feed to N.B. (*Id.*, ¶ 48). The Complaint alleges that Defendant Blue spent the next three days feeding a false story to N.B., which included incorporating facts that N.B. had described to Defendant Blue that occurred in a prior foster placement. (*Id.*, ¶ 49).

On October 31, 2019, Defendant Leah Brown conducted the forensic interview of N.B., while Defendant Grundy observed. (*Id.*, ¶ 51). The Complaint alleges that at the time of the interview, Brown knew that N.B. had denied any acts of sexual abuse, and that Defendant Grundy told Brown that she believed N.B. had been sexually abused and told Brown the false narrative that Defendant Grundy contrived with Defendants Warren and Blue. (*Id.*). The Complaint further alleges that Defendants Grundy and Brown consulted with each other throughout the interview, and that Brown would prompt N.B. when necessary, so that N.B. could repeat the false story crafted by the Defendants and fed to N.B. by Defendant Blue. (*Id.*, ¶ 52). The Complaint alleges that Brown collaborated with Defendant Grundy to manipulate and coerce N.B. into repeating the

false narrative that Plaintiff had forced N.B. to commit an act of oral sex on him by coaching N.B. to adopt the story through leading questions that required only "yes" or "no" responses. (*Id.*, ¶¶ 52-53). The Complaint alleges that N.B. repeated "(or tried to)" the false story to please her mother who promised her she would be rewarded and not have to go to her father's house if she told the story to the forensic interviewer. (*Id.*, ¶ 54).

At some undated point, the Complaint alleges Elaina Scerena retained Defendant Eytalis to conduct therapy with N.B. that involved continuing to feed N.B. a false story of abuse that the Defendants contrived. (*Id.*, ¶ 55). Beginning December 10, 2019, Defendant Eytalis began working with N.B., and the Complaint alleges that although N.B. denied the sexual abuse claims during their initial sessions, Defendant Eytalis noted that N.B. began repeatedly telling her that Plaintiff sexually abused her, consistent with the story that the Defendants fabricated. (*Id.*, ¶ 56). At some undated point, Defendants Warren and Grundy interviewed Plaintiff regarding the sexual abuse allegations. (*Id.*, ¶ 59). Plaintiff denied the allegations, told Defendants Warren and Grundy about the bitter divorce proceedings and his own suspicions that Defendant Blue had a motive to make a false allegation, and urged them to investigate the claim. (*Id.*, ¶¶ 59-61).

Over the next three months, Defendants Warren and Morse and the DCFS Defendants reviewed DCFS records and interviewed individuals in an effort to corroborate the sexual abuse allegations. (*Id.*, ¶ 63). The Complaint alleges that the developed evidence exculpated Plaintiff. (*Id.*). The Complaint further alleges that the DCFS Defendants discovered more evidence and reports that N.B. had been sexually abused prior to her placement with the Blues, and although the DCFS Defendants reported this information to Defendant Warren, they together agreed to conceal the information from Plaintiff and the criminal justice system. (*Id.*, ¶ 65).

Defendant Warren urged the Williamson County State Attorney's Office to charge Plaintiff

with aggravated sexual assault against N.B., even though, the Complaint alleges, there was no probable cause, and he knew N.B.'s account was fabricated by himself, Defendants Grundy and Blue and had been reinforced by Brown and Defendant Eytalis. (*Id.*, ¶ 66). The Complaint alleges Defendant Warren consulted with Defendant Irvin about approving sexual assault charges against Plaintiff, and Defendant Irvin told Defendants Warren, Grundy, and Garnett that if DCFS made a finding that sexual abuse was indicated, she would persuade the assistant attorney to approve criminal charges against Plaintiff. (*Id.*, ¶ 67).

The Complaint alleges that on January 28, 2020, Defendant Grundy, with the supervision and approval of Defendant Garnett, made a finding that sexual abuse was indicated. (*Id.*, ¶ 68). On February 18, 2020, Defendant Irvin interviewed Defendant Blue and N.B. and approved felony charges against Plaintiff. (*Id.*, ¶¶ 69-70). At Plaintiff's criminal bench trial before Circuit Court Judge Michelle Schafer, the Complaint alleges the prosecution's case hinged entirely on the fabricated testimony of N.B.—procured by the Defendant Officers, DCFS Defendants, Defendant Eytalis, and the Defendant Prosecutor. The Complaint alleges Defendants Warren and Blue testified falsely at trial, no Defendant produced comprehensive information about N.B.'s prior history of sexual abuse to Plaintiff's criminal attorney, no physical or forensic evidence suggested Plaintiff abused N.B., and that during N.B.'s testimony, she stated she was not sure whether any sexual abuse had occurred. (*Id.*, ¶¶ 72-75). After the parties rested and Defendant Schafer was in her chambers, Defendant Schafer reviewed a box of DCFS records and other discovery material that had not been introduced into evidence by either party. (*Id.*, ¶ 76). In her ruling, Defendant Schafer found Plaintiff guilty of aggravated criminal sexual assault and specifically referenced reports that had not been introduced into evidence. (*Id.*, ¶ 77). The Complaint alleges Defendant Schafer abdicated her judicial role and became an investigator when she made factual findings of

guilt based on fabricated evidence that was not introduced into evidence. (*Id.*). Plaintiff was sentenced to six years in the Illinois Department of Corrections. (*Id.*, ¶ 78).

On May 2, 2023, the Illinois Appellate Court reversed Plaintiff's conviction outright after finding that the prosecution had failed to meet its burden proof. (*Id.*, ¶ 80). The Williamson County State's Attorney filed a motion to reconsider and a petition for leave to appeal to the Illinois Supreme Court. (*Id.*, ¶ 81). On September 27, 2023, the Illinois Supreme Court denied the petition for leave. (*Id.*, ¶ 82). On December 6, 2024, Plaintiff filed his Complaint, which was later amended on December 9, 2024. (*See* Docs. 1, 3).

Count I is a 42 U.S.C. § 1983 claim for fabrication of evidence against "the individual Police Officer Defendants, Defendant Irvin, Defendant Blue, Defendant Eytalis, and DCFS Defendants…." (*Id.*, ¶ 88). Count II is a 42 U.S.C. § 1983 claim for *Brady* violations against "all of the individual Police Officer Defendants and Prosecutor Defendants…." (*Id.*, ¶ 95). Count III is a 42 U.S.C. § 1983 claim for malicious prosecution and unlawful detention under the Fourth and Fourteenth Amendments against "the Defendant officers, DCFS Defendants, Defendant Schafer and Defendant Irvin…." (*Id.*, ¶ 102). Count IV is a 42 U.S.C. § 1983 claim for conspiracy to violate constitutional rights against "all of the individual Police Officer Defendants, DCFS Defendants, Defendant Blue, Prosecutor Defendants, Defendant Eytalis, Defendant Schaefer…" and "all of the individual Defendants…." (*Id.*, ¶¶ 109-110). Count V is a 42 U.S.C. § 1983 claim for failure to intervene against "one or more of the individual Police Officer Defendants, the Defendant Prosecutors, Defendant Eytalis, DCFS Defendants, and other unknown individuals…." (*Id.*, ¶ 116).

Counts VI-XII are state law claims brought under Illinois law. (*See id.*). Count VI is a malicious prosecution claim against "all of the individual Defendants" and later lists "[t]he

individual Defendant officers, Prosecutor Defendant, Defendant Eytalis, DCFS Defendants and Defendant Blue…." (*Id.*, ¶ 121-122). Count VIII is a civil conspiracy claim against "the Defendants…." (*Id.*, ¶ 126). Count VIII is a claim for intentional infliction of emotional distress against "the individual Defendants…" (*Id.*, ¶ 132). Count IX is a claim for willful and wanton conduct against "the Defendants…." (*Id.*, ¶ 137). Count X is a claim for parental alienation presumably against Defendant Blue, Defendants Warren, Gurndy, and Eytalis, DCFS Defendants, and Defendant Irvin. (*Id.*, ¶¶ 140-141). Count XI is a claim for respondeat superior against Defendant City of Marion that seeks to impose liability on the City of Marion through the actions of the individual Defendant officers. (*Id.*, ¶¶ 144-145). Count XII is a claim for indemnification against the City of Marion and Williamson County based on the actions of the individual Defendant officers and individual Defendant Prosecutor. (*Id.*, ¶¶ 148-149).

## <u>LEGAL ARGUMENT</u>

### I.    Based on the facts plead, Defendants Brown and Scerena are entitled to sovereign immunity on all counts against them.

The Complaint alleges that "[a]t all relevant times, Defendants Grundy, Garnett, Brown, and Scerena, were employed by the Illinois Department and Children Family Services." (*Id.*, ¶ 19). The Complaint further states that each of the individual DCFS Defendants is sued in their individual capacity. (*Id.*, ¶ 27).

Under the Eleventh Amendment, sovereign immunity "bars actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Oleszczak v. Ill. Dep't of Children & Family Servs.*, No. 17 C 933, 2018 U.S. Dist. LEXIS 117786, at \*11 (N.D. Ill. July 16, 2018) (quoting *Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletics Dep't*, 510 F.3d 681, 695 (7th Cir. 2007)). Such immunity is subject to "three exceptions": (1) "a state may waive immunity by consenting to suit in federal court"; (2) "Congress may abrogate the state's immunity

through a valid exercise of its powers"; and (3) "under the *Ex parte Young* doctrine, a plaintiff may file suit[] against state officials seeking prospective equitable relief for ongoing violations of federal law." *Id.* Further, "[i]t is well established that the Eleventh Amendment prohibits a federal court from ordering state officials to conform their conduct to state law." *Id.* (quoting *Komyatti v. Bayh,* 96 F.3d 955, 959 (7th Cir. 1996) (further noting that the doctrine of sovereign immunity relates to jurisdiction but does not "function as a true jurisdictional bar").

It is well established that "Congress did not abrogate the states' sovereign immunity from suit under section 1983, as it could have done." *McCraven v. Illinois*, No. 12-cv-4451, 2013 U.S. Dist. LEXIS 44308, at *6 (N.D. Ill. Mar. 27, 2013) (quoting *Thomas v. Illinois,* 697 F.3d 612, 613 (7th Cir. 2012) (citing *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 66-70 (1989)). However, state agencies are not "persons" able to be sued under § 1983, "thus providing a statutory as distinct from a constitutional defense to section 1983 suits against states and their agencies." *Id.* at *6-7 (quoting *Thomas*, 697 F.3d at 613 (citing *Will*, 491 U.S. at 70-71). A court must address a statutory defense before the constitutional defense in order to avoid "unnecessary constitutional decision making." *Id.* at * 7 (quoting *Thomas,* 697 F.3d at 613 (citations omitted)). "The DCFS is a state agency; it was established by state statute and is funded by the state." *Id.* (quoting *Darryl H. v. Coler*, 801 F.2d 893, 908 (7th Cir. 1986)).

As the Complaint on its face alleges Defendants Brown and Scerena are DCFS employees, they are entitled to sovereign immunity and Counts I, III- X must be dismissed.

While Plaintiff plead that he is suing each of the individual DCFS Defendants in their individual capacities, that alone does not defeat sovereign immunity. Illinois's State Lawsuit Immunity Act provides that "the State of Illinois shall not be made a defendant or party in any court." *T.S. v. Cty. of Cook*, 67 F.4th 884, 891 (7th Cir. 2023) (quoting 745 Ill. Comp. Stat. 5/1).

The Illinois Court of Claims has exclusive jurisdiction over "[a]ll claims against the State founded upon any law of the State of Illinois." *Id.* (quoting 705 Ill. Comp. Stat. 505/8(a)). The prohibition "against making the State of Illinois a party to a suit cannot be evaded by making an action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested." *Id.* (quoting *Sass v. Kramer*, 72 Ill. 2d 485, (Ill. 1978)). Therefore, the "formal identification of the parties as they appear in the record is not dispositive" as "substance takes precedence over form." *Id.* (quoting *Leetaru v. Bd. of Trs. of the Univ. of Ill.*, 32 N.E.3d 583, 595 (Ill. 2016). Instead, courts must determine "[w]hether an action is in fact one against the State, and hence one that must be brought in the Court of Claims, depends ... on the issues involved and the relief sought." *Id.* (quoting *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990). An action brought against a state employee is considered one against the state when:

> [T]here are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

*Id.* at 892 (quoting *Healy*, 549 N.E.2d at 1247 (citation omitted)). Thus, if an action brought against a state official in her personal capacity "could operate to control the actions of the State or subject it to liability," it is also considered an action against the state. *Id.* (quoting *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992).

*Factor 1: Scope of Authority*

Whether "an agent or employee of the State acted beyond the scope of his authority," depends on whether "the employee intended to perform some function within the scope of his or her authority when committing the legal wrong." *Id.* (quoting *Healy*, 549 N.E.2d at 1247) (quoting

*Jackson v. Alverez*, 831 N.E.2d 1159, 1164 (Ill. App. 4th Dist. 2005). Further, "sovereign immunity presupposes the possibility of a legal wrong by a state employee," and "legal wrongs are, *per se*, unauthorized, [so] the relevant question cannot be whether the employee had authority to commit the legal wrong." *Id.* "Instead, the question is whether the employee intended to perform some function within the scope of his or her authority when committing the legal wrong." *Id. See Sydney Williams v. Haleighs Hope, Inc. et al*, 3:22-cv-03090-CRL-EIL, Mem. Op (March 11, 2025) (C.D. Ill.), Doc. 104 (finding sovereign immunity applies to individual DCFS officers after discussion of the *Healy* factors).

Regarding Defendant Brown, the Complaint alleges she conducted the forensic interview with N.B. on October 31, 2019. (Doc. 3, ¶ 51). Brown is not named elsewhere in the Complaint except in regards to alleged tortious behavior, such as coaching N.B. and asking N.B. leading questions, at the October 31, 2019 forensic interview. (*Id.*, ¶¶ 51-53). There are no allegations in the Complaint that Brown interacted with the Williamson County State's Attorney's office to push for charges to be filed, nor that she participated, testified, or was otherwise involved in Plaintiff's September 2021 criminal trial. In Defendant Brown's conduction and alleged wrongful actions during the conduction of the forensic interview, Defendant Brown intended to act within the scope of her authority as forensic interviewer.

Regarding Defendant Scerena, she is only mentioned by name in two allegations in the Complaint. First, the Complaint alleges Scerena retained Defendant Eytalis to conduct therapy with N.B., and there are no allegations that Scerena participated in or conducted the therapy sessions with N.B. and Defendant Eytalis. (*Id.*, ¶¶ 55-58). The second mention of Scerena is in the Introduction section. The Complaint alleges:

> After developing no additional evidence and after obtaining exculpatory DCFS records that showed that N.B. was prone to deception, was easily suggestible by adults, and had

suffered prior sexual abuse, Defendants Grundy, Garnett and Scerena agreed to make a finding that abuse was indicated to ensure a criminal prosecution as directed by Defendant Irvin.

(*Id.*, ¶ 8). However, this is the only allegation in the Complaint that specifically names Scerena as being involved in the decision to make a finding that abuse was indicated. Under Factual Allegations in the subsection "Williamson County Assistant State's Attorney Lisa Irvin Approves Charges", the allegations in Paragraph 8 are further explained. (*See id.*, ¶¶ 63-68). Although the DCFS Defendants are mentioned, only Defendants Warren and Grundy are mentioned by name. (*See id.*). There is no mention aside from Paragraph 8 that Scerena was involved with the discussion to make a finding indicating sexual abuse.

The Complaint specifically alleges that "Defendant Warren urged the Williamson County State's Attorney's office to charge Plaintiff with aggravated sexual assault." (*Id.*, ¶ 66). It further alleges that Defendant Warren consulted with Defendant Irvin about approving sexual assault charged against Plaintiff, and that "Defendant Irvin told Defendants Warren, Grundy, and Garnett that if DCFS made a finding that sexual abuse was indicated, she would persuade the assistant state's attorney to approve criminal charges against Plaintiff." (*Id.*, ¶ 67). It was Defendant Grundy, with the supervision and approval of Defendant Garnett, that was alleged to have made a finding that sexual abuse was indicated. (*Id.*, ¶ 68). There are no allegations that Scerena participated, testified, or was otherwise involved in Plaintiff's September 2021 criminal trial.

In assigning a therapist for a child she believed was sexually abused, Defendant Scerena acted in the scope of her authority as an alleged DCFS employee.

*Factor 2: Source of Duty*

When analyzing whether the "duty alleged to have been breached was not owed to the public generally independent of the fact of State employment," "the proper inquiry is to analyze

the source of the duty the employee is charged with breaching in committing the allegedly [wrongful] act." *T.S. v. Cty. of Cook*, 67 F.4th 884, 892 (7th Cir. 2023) (quoting *Currie v. Lao*, 592 N.E.2d 977, 980 (Ill. 1992)). Where the alleged wrongful conduct "arose out of the State employee's breach of a duty that is imposed on him *solely* by virtue of his State employment," sovereign immunity bars the action in circuit court. *Id.* But "where the employee is charged with breaching a duty imposed on him independently of his state employment, sovereign immunity will not attach." *Id.* (quoting *Jinkins v. Lee*, 807 N.E.2d 411, 420 (Ill. 2004)).

In the Complaint, there are no allegations or facts plead that indicate how Defendants Brown and Scerena's alleged breaches of duty and tortious acts or omissions were independent of their alleged employment at DCFS. Further, it is clear any duty owed to Plaintiff was owed solely out of Defendants Brown and Scerena's alleged employment with DCFS. For example, any duty not to falsify N.B.'s forensic interview or negligently conduct N.B.'s forensic interview arises from Defendant Brown's alleged employment at DCFS.

*Factor 3: Normal & Official Functions*

In determining "normal and official functions," the inquiry concerns whether the alleged breach "involved matters ordinarily within the normal and official functions" of the state employee, which is an inquiry that "overlaps to some extent" with the first factor. *Sydney Williams v. Haleighs Hope, Inc. et al*, 3:22-cv-03090-CRL-EIL, Mem. Op (March 11, 2025) (C.D. Ill.), Doc. 104; *T.S. v. Cty. of Cook*, 67 F.4th 884, 893 (7th Cir. 2023). Conducting a forensic interview of a suspected child abuse victim and supporting the suspected child abuse victim with resources such as therapy fall within the "normal and official functions" of Defendants Brown and Scerena's alleged employment at DCFS.

Because the three *Healy* factors indicate that Defendants Brown and Scerena acted both

within the scope of their authority and within their normal and official functions as alleged

employees of DCFS related to Brown's alleged acts in the forensic interview and Scerena's

retention of a therapist for N.B., and the source of any duty owed to Plaintiff stems from their

alleged state employment at DCFS, Plaintiff's claims should be treated as if they were an action

against the state. . As such, the Illinois Court of Claims has exclusive jurisdiction over Counts I,

III, IV, V, VI, VII, VIII, IX, and X as they are alleged against Defendants Leah Brown and Elaina

Scerena. Therefore, Counts I and III-X must be dismissed against Defendants Brown and Scerena.

## II.    **In the alternative, Counts V-X against Defendants Brown and Scerena and Counts I and IV against Defendant Scerena must be dismissed for failure to state a claim upon which relief can be given.**

### A.    Count I – Fabrication of Evidence

Regarding the DCFS Defendants, Count I alleges that they "deprived Plaintiff of his

constitutional right to a fair trial, in violation of the Fourteenth Amendments by fabricating

statement of N.B. falsely implicating Plaintiff in sexual abuse of a child." (Doc. 3, ¶ 88). Further:

> *In the manner described more fully above*, Defendants fabricated, coerced, manipulated and/or solicited false testimony from N.B., implicating Plaintiff in the crimes that he knew he did not commit; falsified police reports; falsified a forensic interview, obtained Plaintiff's conviction using false evidence; and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff at his criminal trial.

(*Id.*, ¶ 89) (emphasis added). The Compliant contains no allegations that Defendant Scerena was

involved in fabricating, coercing, manipulating, and/or soliciting false testimony from N.B. Nor

are there any allegations that Defendant Scerena falsified police reports or the forensic interview

or obtained Plaintiff's conviction using false evidence. The closest suggestion is that Defendant

Scerena agreed with Defendants Grundy and Garnett to make a finding that abuse was indicated,

despite developing no additional evidence and obtaining exculpatory DCFS records that showed

that N.B. was prone to deception, was easily suggestible by adults, and had suffered prior sexual

abuse. (See *id.*, ¶ 8). However, even if this allegation is true, the allegation did not allege that

Defendant Scerena falsified or fabricated any evidence.

Thus, because the Complaint did not plead facts that Defendant Scerena fabricated or falsified any evidence, Count I of the Complaint must be dismissed against Defendant Scerena.

### B. Count III – Malicious Prosecution & Unlawful Detention

First, regarding the malicious prosecution under 42 U.S.C. § 1983 aspect of Count III, it must be dismissed because Illinois law provides a parallel remedy. The Fourteenth Amendment cannot support Plaintiff's malicious prosecution claim because "the 'due process clause' does not support a constitutional tort of malicious prosecution if state law provides a parallel remedy." *Barnett v. City of Chi.*, No. 18 C 7946, 2020 U.S. Dist. LEXIS 133298, at *18 (N.D. Ill. July 28, 2020) (quoting *Johnson v. Saville*, 575 F.3d 656, 663 (7th Cir. 2009) (citing *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001), abrogated on other grounds by *Manuel I*, 137 S. Ct. 911, 197 L. Ed. 2d 312)). "Federal courts are rarely the appropriate forum for malicious prosecution claims [because] ... individuals do not have a federal right not to be summoned into court and prosecuted without probable cause, under either the Fourth Amendment or the Fourteenth Amendment's Procedural Due Process Clause." *Kirkpatrick v. Cty. of Williamson*, No. 22-cv-2084-SMY, 2023 U.S. Dist. LEXIS 75591, at *10 (S.D. Ill. May 1, 2023) (quoting *Ray v. City of Chi.*, 629 F.3d 660, 664 (7th Cir. 2011). Plaintiffs may "bring Section 1983 malicious prosecution suits [only] when the relevant state's law does not provide them with a way to pursue such claims." *Id.*; *see also Newsome v. McCabe*, 256 F.3d 747, 750-751 (7th Cir. 2001).

Illinois provides a state law claim for malicious prosecution. *Id.*; *See Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013) (outlining the elements of a malicious prosecution claim under Illinois law). Therefore, Plaintiff cannot pursue a federal malicious prosecution claim, especially when he is also bringing a state malicious prosecution claim in Count VI. As such,

Plaintiff's federal prosecution claim under Count III must be dismissed.

Regarding the remaining claim under Count III, it is unclear whether Plaintiff's claim for unlawful detention is being brought under both the Fourth and Fourteenth Amendments or only the Fourth Amendment. It is also unclear whether Plaintiff's unlawful detention claim is for pretrial detention or wrongful conviction based on fabricated evidence and/or under *Brady v. Maryland*, 373 U.S. 83 (1963); *Avery v. City of Milwaukee*, 847 F.3d 433, 439 (7th Cir. 2017).

To the extent Plaintiff is alleging Defendants Brown and Scerena violated his rights in a claim for unlawful pretrial detention under the Fourth and Fourteenth Amendments, the claim under the Fourteenth Amendment must be dismissed. The Seventh Circuit has held the "the Fourth Amendment, not the Due Process Clause, is the source of the right in a § 1983 claim for unlawful pretrial detention, whether before or after the initiation of formal legal process." *Lewis v. City of Chi.*, 914 F.3d 472, 479 (7th Cir. 2019). As such, Plaintiff can only bring a claim for unlawful pretrial detention under the Fourth Amendment and his claim under the Fourteenth Amendment must be dismissed.

For the remaining Fourth Amendment claim, an unlawful pretrial detention claim accrues when the detention in question ends, which can be when the plaintiff is released on bond. *Townsel v. Chi. Police Dep't*, No. 20-cv-01774, 2023 U.S. Dist. LEXIS 176424, at *11 (N.D. Ill. Sep. 30, 2023). The statute of limitations is an affirmative defense. Fed. R. Civ. P. 8(c)(1). A plaintiff can plead himself out of court on a statute of limitation basis if the face of the complaint reveals that the claim is time-barred. *Kirkpatrick v. Cty. of Williamson*, No. 22-cv-2084-SMY, 2023 U.S. Dist. LEXIS 75591, at *6 (S.D. Ill. May 1, 2023) (citing *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 383 (7th Cir. 2010)). Section 1983 claims borrow the statute of limitations for analogous personal-injury claims in the forum state; in Illinois that period is two years. *Id.*;

*see Lewis v. City of Chi.*, 914 F.3d 472, 478 (7th Cir. 2019). Here, Plaintiff was released on bond on February 27, 2020. 2020CF109 Blue, David I, History (Feb. 27, 2020), *Judici*, https://www.judici.com/courts/cases/case_history.jsp?court=IL100025J&ocl=IL100025J,2020CF109,IL100025JL2020CF109D1. The two-year statute of limitations expired on February 27, 2022, and thus, the claim is time barred.

To the extent Plaintiff is alleging his unlawful detention is for wrongful conviction based on fabricated evidence and/or *Brady* violations, this claim should be dismissed as duplicative. The Seventh Circuit noted that unlawful detention for wrongful conviction sounds in the Fourteenth Amendment as a violation of due process. *See Lewis*, 914 F.3d at 479-480. This claim is duplicative to Plaintiff's claims in Count I and III of the Complaint. "A deprivation of liberty is a necessary element of a due process claim premised on allegations of evidence fabrication," *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016), and the Seventh Circuit has "consistently held that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of her liberty in some way." *Whitlock v. Brueggemann*, 682 F.3d 567, 580 (7th Cir. 2012).

As such, both the federal malicious prosecution and unlawful detention claims must be dismissed against Defendants Brown and Scerena.

### C. Counts IV and V – Conspiracy to Violate Constitutional Rights and Failure to Intervene

Both Count IV (conspiracy to violate constitutional rights) and Count V (failure to intervene) are derivative claims. "A § 1983 conspiracy claim requires both (1) an underlying constitutional violation and (2) an agreement among the defendants to inflict the unconstitutional harm." *O'Dekirk v. Roechner*, No. 23-cv-4658, 2025 U.S. Dist. LEXIS 28319, at *8 (N.D. Ill. Feb. 18, 2025) (quoting *Green v. Howser*, 942 F.3d 773, 778 (7th Cir. 2019); *Daugherty v. Page*, 906

F.3d 606, 612 (7th Cir. 2018)). As such, a conspiracy to inflict harm does not result in a § 1983 violation unless the harm inflicted violates a plaintiff's constitutional rights. *Id.*; *see, e.g., Coleman v. City of Peoria, Illinois*, 925 F.3d 336, 351 (7th Cir. 2019) (conspiracy claims "depend on proof of an underlying constitutional violation"). Consequently, the viability of Plaintiff's conspiracy claim depends upon whether he has sufficiently alleged a fabrication of evidence claim (Count I) and/or malicious prosecution claim (Count III). Likewise, this is also true for Plaintiff's Count V failure to intervene claim as it is a derivative claim. *See Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016) (failure to intervene claims rely on an underlying constitutional violation, and if the constitutional violation is time-barred, so is the derivative failure to intervene claim).

Regarding Defendant Scerena, because Counts I and III must be dismissed against here, there are no underlying constitutional claims remaining. As such, Counts IV and V must be dismissed against Defendant Scerena.

Further, a government official is also liable under 42 U.S.C. § 1983 if he fails to intervene to stop another official's constitutional violation if he "know[s] that a [person's] rights are being infringed, and ... ha[s] a realistic opportunity to intervene." *Arbuckle v. Wilcox*, No. 20 CV 1419, 2023 U.S. Dist. LEXIS 203566, at *12-13 (N.D. Ill. Nov. 14, 2023) (quoting *Doxtator v. O'Brien*, 39 F.4th 852, 864-65 (7th Cir. 2022)). "The Seventh Circuit acknowledges a 'failure to intervene' basis for a constitutional violation under the Eighth Amendment." *Johansen v. Curran*, No. 15 C 2376, 2016 U.S. Dist. LEXIS 61512, at *19 (N.D. Ill. May 10, 2016) (quoting *Watkins v. Ghosh*, 11 C 1880, 2014 U.S. Dist. LEXIS 27555 at *5 (N.D. Ill. Mar. 4, 2014) (citation omitted)). To establish a failure to intervene claim a plaintiff must plead the following: "(i) the defendant knew of the unconstitutional conduct; (ii) the defendant had a realistic opportunity to prevent the harm; (iii) the defendant failed to take reasonable steps to prevent the harm; and (iv) the plaintiff suffered

harm as a result." *Id.* "Failure to intervene liability is not limited to the contexts of excessive force cases," but "it is 'not so broad as to place a responsibility on every government employee to intervene in the acts of all other government employees.'" *Id.* (quoting *Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2003)). However, "there must be some particular connection or relationship between the government employees or entities such that the duty to intervene arises." *Id.*

Here, the Complaint does not allege violation(s) under which constitutional amendment(s) Plaintiff is alleging Defendants Brown and Scerena failed to intervene. It certainly is not the Eighth Amendment, and it is unclear whether the Seventh Circuit recognizes non-Eighth Amendment failure to intervene claims. In the event the Seventh Circuit does recognize such a claim, regarding Defendant Brown, the Complaint has not plead the elements of a failure to intervene claim. Particularly, there are no facts alleging Defendant Brown had a realistic opportunity to prevent the harm and no facts that Defendant Brown failed to take reasonable steps to prevent the harm. Threadbare allegations that "these Defendants had ample, reasonable opportunities as well as a duty to prevent this harm but failed to do so" is not enough to survive a motion to dismiss. As such, Count V against Defendant Brown must be dismissed.

### D. Count VI – Malicious Prosecution

The Illinois Supreme Court has held that "malicious prosecution actions are subject to more stringent limitations than other tort actions and will be allowed only when all of the requirements for maintaining an action have been met." *Beaman v. Freesmeyer*, 2019 IL 122654, ¶ 25; *see* 52 Am. Jur. 2d Malicious Prosecution § 5 (2018). To state a cause of action for the tort of malicious prosecution, the plaintiff must prove five elements: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the

proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff. *Id.* at ¶ 26; *Swick v. Liautaud*, 169 Ill. 2d 504, 512 (1996); *Ritchey v. Maksin*, 71 Ill. 2d 470, 475 (1978); *Freides v. Sani-Mode Mfg. Co.*, 33 Ill. 2d 291, 295 (1965). "The absence of any of these elements bars a plaintiff's malicious prosecution claim." *Swick*, 69 Ill. 2d at 512.

The burden of showing probable cause only arises if Brown and Scerena played a significant role in causing the prosecution of Plaintiff. Regarding the first element for a claim of malicious prosecution, the predominant rule in Illinois is the "the significant role" test which states that "liability for the malicious criminal prosecution extends to all persons who played a significant role in causing the prosecution of the plaintiff, provided all of the elements of the tort are present." *Frye v. O'Neill*, 166 Ill. App. 3d 963, 975 (4th Dist. 1988). In explaining what constitutes a significant role, the Illinois Supreme Court stated, "liability thus depends on whether the defendant was actively instrumental in causing the prosecution." *Beaman*, 2019 IL 122654, ¶ 44. The Court also stated that "the presumption of prosecutorial independence can be overcome by showing that the defendant improperly exerted pressure on the prosecutor, knowingly provided misinformation to him…, concealed exculpatory evidence, or otherwise engaged in wrongful or bad-faith conduct instrumental in the initiation of the prosecution." *Id.*; 52 Am. Jur. 2d Malicious Prosecution § 88 (2018).

Regarding Defendant Brown, she conducted the forensic interview with N.B. on October 31, 2019. (Doc. 3, ¶ 51). Brown is not named elsewhere in the Complaint except in regards to alleged tortious behavior, such as coaching N.B., at the October 31, 2019 forensic interview. (*Id.*, ¶¶ 51-53). There are no allegations in the Complaint that Brown interacted with the Williamson County State's Attorney's office to push for charges to be filed, nor that she participated, testified,

or was otherwise involved in Plaintiff's September 2021 criminal trial.

Regarding Defendant Scerena, the only relevant mention is in the Introduction section. The Complaint alleges:

> After developing no additional evidence and after obtaining exculpatory DCFS records that showed that N.B. was prone to deception, was easily suggestible by adults, and had suffered prior sexual abuse, Defendants Grundy, Garnett and Scerena agreed to make a finding that abuse was indicated to ensure a criminal prosecution as directed by Defendant Irvin.

(*Id.*, ¶ 8). However, this is the only allegation in the Complaint that specifically names Scerena as being involved in the decision to make a finding that abuse was indicated. Under Factual Allegations in the subsection "Williamson County Assistant State's Attorney Lisa Irvin Approves Charges", the allegations in Paragraph 8 are further explained. (*See id.*, ¶¶ 63-68). Although the DCFS Defendants are mentioned, only Defendants Warren and Grundy are mentioned by name. (*See id.*). There is no mention aside from Paragraph 8 that Scerena was involved with the discussion to make a finding indicating sexual abuse.

The Complaint specifically alleges that "Defendant Warren urged the Williamson County State's Attorney's office to charge Plaintiff with aggravated sexual assault." (*Id.*, ¶ 66). It further alleges that Defendant Warren consulted with Defendant Irvin about approving sexual assault charged against Plaintiff, and that "Defendant Irvin told Defendants Warren, Grundy, and Garnett that if DCFS made a finding that sexual abuse was indicated, she would persuade the assistant state's attorney to approve criminal charges against Plaintiff." (*Id.*, ¶ 67).  It was Defendant Grundy, with the supervision and approval of Defendant Garnett, that was alleged to have made a finding that sexual abuse was indicated. (*Id.*, ¶ 68). It further alleges that Defendant Warren consulted with Defendant Irvin about approving sexual assault charged against Plaintiff, and that "Defendant Irvin told Defendants Warren, Grundy, and Garnett that if DCFS made a finding that

sexual abuse was indicated, she would persuade the assistant state's attorney to approve criminal charges against Plaintiff." (*Id.*, ¶ 67).

It was Defendant Grundy, with the supervision and approval of Defendant Garnett, that was alleged to have made a finding that sexual abuse was indicated. (*Id.*, ¶ 68). After this finding, Defendant Irvin interviewed Defendant Blue and N.B. (*Id.*, ¶ 69). During the interview, it was alleged that Defendant Irvin fed the false narrative to N.B., coached her to repeat it, and helped fabricate evidence against Plaintiff. (*Id.*, ¶ 70). It was Defendant Irvin that is alleged to have approved felony charges against Plaintiff. (*Id.*). Finally, there are no allegations that Defendant Scerena participated, testified, or was otherwise involved in Plaintiff's September 2021 criminal trial.

Because there are no allegations that Brown and Scerena were involved with pushing forward criminal charges against Plaintiff and/or allegations that Brown and Scerena interacted with or improperly exerted influence on Defendant Irvin, Defendants Brown and Scerena did not play a significant role in causing Plaintiff's prosecution. Thus, Plaintiff cannot establish the necessary elements against Defendants Brown and Scerena. As such, Count VI must be dismissed against Brown and Scerena.

### E. Count VIII – Intentional Infliction of Emotional Distress

In Count VIII, Plaintiff brings a claim for intentional infliction of emotional distress ("IIED") based on "the acts and conduct of the individual Defendants as set forth above…." (Doc. 3, ¶ 127). However, this is simply a "formulaic recitation of the elements of a cause of action" which the Seventh Circuit and Supreme Court have deemed insufficient to survive a motion to dismiss. *Lewis v. Metro Enf't*, No. 15-cv-50264, 2016 U.S. Dist. LEXIS 28281, at *8 (N.D. Ill. Mar. 7, 2016); *see Bonnstetter v. City of Chicago*, 811 F.3d 969, 2016 WL 403215, at *3 (7th Cir.

Feb. 3, 2016) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). It is unclear who "the individual Defendants" refers to and which acts and conduct of which Defendant are alleged to have caused Plaintiff severe emotional distress. To the extent Brown and Scerena are alleged to be liable under Count VIII for IIED, this claim must be dismissed because it fails to state a claim.

Additionally, the claim is time-barred by the statute of limitations. Section 2-619(a)(5) of the Illinois Code of Civil Procedure (735 ILCS 5/2-619(a)(5) permits the dismissal of a claim as time-barred. Under section 13-202 of the Code (*id.* § 13-202), an action for personal injury— including the intentional infliction of emotional distress (*see Pavlik v. Kornhaber*, 326 Ill. App. 3d 731, 744, 761 N.E.2d 175, 260 Ill. Dec. 331 (2001))—must be commenced within two years of when the cause of action accrues. *S.E. v. BMO Harris Bank Nat'l Ass'n*, 2025 IL App (2d) 240311, ¶ 34.

Defendant Brown conducted the forensic interview with N.B. on October 31, 2019. (Doc. 3, ¶ 51). Brown is not named elsewhere in the Complaint except in regards to alleged tortious behavior at the October 31, 2019 forensic interview. (*Id.*, ¶¶ 51-53). To the extent Brown's alleged conduct in the October 31, 2019 forensic interview is alleged to have caused Plaintiff severe emotional distress, that claim is time-barred. The statute of limitations ran on October 31, 2021.

In the Complaint, Defendant Scerena is only mentioned by name in two allegations. First, the Complaint alleges Scerena retained Defendant Eytalis to conduct therapy with N.B., and there are no allegations that Scerena participated in or conducted the therapy sessions with N.B. and Defendant Eytalis. (Doc. 3, ¶¶ 55-58). There are no allegations that Scerena had an influence or control over Defendant Eytalis's conduct in the therapy sessions with N.B. (*Id.*). While there is no specific date listed in the Complaint as to when Scerena retained Defendant Eytalis, it was

presumably around or about December 10, 2019, since the Complaint alleges that is the date Defendant Eytalis began working with N.B. (*See id.*, ¶ 56). To the extent Scerena's alleged conduct in retaining a therapist for N.B. around or about December 10, 2019 is alleged to have caused Plaintiff severe emotional distress, that claim is time-barred. The statute of limitations ran on December 10, 2021.

The second mention of Scerena is a singular allegation that Defendants Grundy, Garnett, and Scerena agreed to make a finding that abuse was indicated. (*See supra* for discussion). Even assuming that Scerena was involved in the January 28, 2020 decision to make a finding that indicated sexual abuse —which Defendant Scerena denies— there are no allegations in the Complaint that Defendant Scerena participated, testified, or was otherwise involved in Plaintiff's September 2021 criminal trial. To the extent Scerena's alleged involvement in the decision to make a finding that indicated sexual abuse around or about January 28, 2020 is alleged to have caused Plaintiff severe emotional distress, that claim is time-barred. The statute of limitations ran on January 28, 2022. As such, Plaintiff's IIED claim must be dismissed.

### F. Count IX – Willful & Wanton Conduct

In Count IX, Plaintiff brings a claim for willful and wanton conduct, alleging "the Defendants had a duty to refrain from willful and wanton conduct" and that "notwithstanding that duty, these Defendants acted willfully and wantonly through a course of conduct that showed an utter indifference to, or conscious disregard of, Plaintiff's rights." (Doc. 3, ¶¶ 132-133). It is unclear who "these Defendants" refers to or which Defendant's course of conduct is being alleged to be willful and wanton. To the extent Brown and Scerena are alleged to be liable under Count IX for willful and wanton conduct, this claim must be dismissed because willful and wanton conduct is not a distinct cause of action under Illinois law.

"Willful and wanton' conduct is an element of a cause of action, not a cause of action on its own." *Brent-Bell v. City of Chi.*, No. 17 C 1099, 2024 U.S. Dist. LEXIS 166778, at *36 (N.D. Ill. Sep. 17, 2024) (quoting *El-Uri v. City of Chicago*, 186 F. Supp. 2d 844, 850 (N.D. Ill. 2002)). Like *Brent-Bell* where the court granted summary judgment in favor of the defendants because "[willful and wanton conduct] is not a viable stand-alone claim," here, this Court must dismiss Plaintiff's Count IX for willful and wanton conduct because it is not a viable stand-alone claim. As such, Count IX must be dismissed for failure to state a claim upon which relief can be granted as willful and wanton conduct is not a cause of action under Illinois law.

### G.  Count X – Parental Alienation

Count X alleges that Defendant Blue, along with Defendants Warren, Grundy, and Eytalis together conceived of carried out a plan to alienate Plaintiff from his children by manipulating N.B. and falsely telling a highly suggestible child that her father abused her. (Doc. 3, ¶ 140). It further alleges that Defendant Blue acted intentionally when she falsely told N.B. that her father sexually abused her and then convinced N.B. to repeat the false story to Defendants Warren, the DCFS Defendants, and Defendant Irvin. (*Id.*, ¶ 141). On its face, it is unclear if Plaintiff is alleging this claim against Defendants Brown and Scerena.

If Count X is being brought against Brown and Scerena, it must be dismissed for failure to state a claim. There is no claim of parental alienation in Illinois. If Plaintiff meant tortious interference with a custodial parent's right to custody, care, and companionship of his child, that claim will similarly fail. Illinois courts have declined "to recognize a cause of action based upon a tortious interference with a custodial parent's right to custody, care, and companionship of his child." *Whitehorse v. Critchfield*, 144 Ill. App. 3d 192, 194 (Ill. App. 4th Dist. 1986). Likewise, under Illinois law no cause of action exists for loss of society resulting from intentional nonfatal

interference with family relationships. *Alber v. Ill. Dep't of Mental Health & Developmental Disabilities*, 786 F. Supp. 1340, 1366 (N.D. Ill. 1992). As such, Count X must be dismissed because it fails to state a claim under Illinois law.

### H.  Count VII – Civil Conspiracy

"Under Illinois tort law, a civil conspiracy requires '(1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff.'" *Brent-Bell v. City of Chi.*, No. 17 C 1099, 2024 U.S. Dist. LEXIS 166778, at *36 (N.D. Ill. Sep. 17, 2024) (quoting *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017); (*Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 509 (7th Cir. 2007)). An agreement is "a necessary and important" element of this cause of action. *Id.*

In Count VII, the Plaintiff brought a civil conspiracy claim alleging "the Defendants acting in concert with one another and other co-conspirators, known and unknown, conspired to accomplish an unlawful purpose by unlawful means." (Doc. 3, ¶ 126). The Complaint further alleges that these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights, and in furtherance of the conspiracy, the Defendants committed overt acts and were otherwise willing participants in joint activity. (*Id.*, ¶¶ 126-127). Perhaps recognizing this as a "formulaic recitation of the elements of a cause of action," the Complaint explains "[t]he violations of Illinois law described in this complaint, including Defendants' malicious prosecution of Plaintiff and their intentional infliction of emotion distress, were accomplished by Defendants' conspiracy." (*Id.*, ¶ 128).

As explained above, all of Plaintiff's Illinois state law violations against Defendants Brown

and Scerena (Counts VI, VIII, IX, and X) must be dismissed. Since Plaintiff alleges the conspiracy accomplished the claims alleged in Counts VI, VIII-X, there cannot be a conspiracy without the underlying acts. As such, Count VII must be dismissed against Defendants Brown and Scerena.

## **CONCLUSION**

For the above reasons, Defendants Brown and Scerena should be dismissed from this matter because they are entitled to sovereign immunity based on the face of the Complaint. In the alternative, in the extent they relate to Defendants Brown and Scerena, Count V- Failure to Intervene, Count VI- Malicious Prosecution, Count VIII- Intentional Infliction of Emotional Distress, Count IX- Willful and Wanton Conduct, and Count X- Parental Alienation must be dismissed for failure to state a claim, and Count VII- Civil Conspiracy must be dismissed because it cannot survive without Counts VI and VIII-X. Count III- Malicious Prosecution must be dismissed because Illinois provides a state law claim for malicious prosecution, and Count III- Unlawful Detention must be dismissed because it is time-barred if plead as a pretrial detention and is duplicative if it is plead as a wrongful conviction. To the extent they relate to Defendant Scerena, Count I- Fabrication of Evidence, must be dismissed for failure to state a claim, and Count IV- Conspiracy to Violate Constitutional Rights and Count V- Failure to Intervene must be dismissed because as derivative claims, they cannot survive if Counts I and III are dismissed.

WHEREFORE, for the above reasons, Defendants Leah Brown and Elaina Scerena pray that this Court dismiss them from this matter.

Respectfully submitted,

WIEDNER & McAULIFFE, LTD.

*/s/ Brent L. Salsbury*
C. Zachary Vaughn, #6288673
Brent L. Salsbury, #6287279
101 S Hanley, Suite 1450
St. Louis, Missouri 63105

(314) 721-3400
(314) 725-5755 – facsimile
czvaughn@wmlaw.com
blsalsbury@wmlaw.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served to all parties of record via the Court's Electronic Filing System on this 25th day of March 2025.

*/s/ Brent L. Salsbury*