IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID BLUE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )  Case No. 2024-cv-2579-JPG |
| | ) |
| THOMAS WARREN, *et. al.*, | ) |
| | ) |
|     Defendants. | ) |

**WCSAO DEFENDANTS' MOTION TO DISMISS AND
SUPPORTING MEMORANDUM**

Defendants, LISA IRVIN ("ASA Irvin") and the WILLIAMSON COUNTY STATE'S ATTORNEY'S OFFICE ("WCSAO"), an Illinois constitutional office established under Article VI, Section 19 (collectively referred to as the "WCSAO Defendants"), by and through one of their attorneys, Julie M. Koerner, now move to dismiss all of Plaintiff's §1983 federal claims and state torts brought against them, pursuant to Fed.R.Civ.P. 12(b)(1) ("Rule 12(b)(1)") and Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), and for an order terminating them as parties to this litigation.[1] In support thereof, the WCSAO Defendants state as follows:

    I.    **INTRODUCTION**

On December 9, 2024, David Blue ("Plaintiff") filed a twelve-count First Amended Complaint against various state officers and local actors purporting to bring claims for a violation of Plaintiff's civil rights under 42 U.S.C. §1983, under several different theories, and state law torts. ("*Compl.*") (*Dkt.* [#3]). All claims arise out of Plaintiff's arrest and prosecution

---

[1] Plaintiff does not bring any substantive or *Monell* claim against the WCSAO, but rather incorrectly names the WCSAO as an agency of Williamson County and seeks "indemnification" from the WCSAO with respect to the alleged misconduct of ASA Irvin. Williamson County is the correct party from which to seek indemnification for any judgment entered against a state's attorney, pursuant to 745 ILCS 10/9-102. *See, National Cas. Co. v. McFatridge*, 604 F.3d 335, 345 (7th Cir. 2010).

by Defendants for the sexual abuse of his adopted minor child N.B. that started on or near October 28, 2019. *Compl.* ¶40. ASA Irvin initiated criminal charges and ultimately prosecuted Plaintiff following her interview with N.B., DCFS's finding that abuse was indicated, and ASA Irvin's evaluation of all of the evidence. *Compl.* ¶¶7-9. On September 9, 2021, Judge Schaffer tried the case and found Plaintiff guilty of aggravated criminal sexual assault. *Compl.* ¶11. Plaintiff's conviction was later reversed by the Illinois Appellate Court, Fifth District on May 2, 2023, and the WCSAO's PLA to the Illinois Supreme Court was denied on September 27, 2023. *Compl.* ¶¶12-13. The Illinois Supreme Court issued the mandate on December 7, 2023. *Id*.

Distilling Plaintiff's allegations down to their 'bare bones' as against ASA Irvin, Plaintiff alleges that ASA Irvin fabricated evidence, to wit: reinforcement of the false narrative of abuse fed to N.B. by Lisa, and/or Marion police, and/or DCFS, suppressed exculpatory material, to wit: ASA Irvin's manipulation of N.B. to repeat false claims of abuse by Plaintiff, and conspiring generally to do these things with the other defendants, *inter alia*. For one or more reasons, all of Plaintiff's claims against ASA Irvin fail for one or all of the following reasons:

1) At all relevant times, ASA Irvin was acting in the course and scope of her position as a WCSAO prosecutor, thus, she cannot be sued in an individual capacity, and any official capacity claim is barred by sovereign immunity;

2) ASA Irvin is entitled to absolute prosecutorial immunity;

3) Plaintiff's group pleading allegations against "All Defendants" are conclusory and impermissible under *Bell Atlantic Corp.* and *Iqbal*'s pleading standards; and fail to put ASA Irvin on notice of the misconduct in which she was personally involved;

4) Alternatively, ASA Irvin is entitled to qualified immunity for conduct which may be characterized as "investigative"; and,

5) As there is no viable claim, against ASA Irvin, Williamson County cannot be liable for indemnification.

## II. FACTUAL OVERVIEW[2]

The following pertinent factual overview is taken from the Plaintiff's Complaint and the unpublished opinion in *People v. Blue*, 2023 IL App (5th) 220177-U, and is briefly summarized as follows:

a. Plaintiff and his former spouse, Lisa Blue ("Lisa"), fostered and later adopted N.B., who is alleged to have had a significant history of behavior and cognitive impairments, allegedly due to prior sexual abuse and environmental neglect. *Compl.* ¶¶36–39.

b. Plaintiff alleges that various state actors, including Marion officers, Warren and Morse, DCFS investigators, Grundy, Garnett, and Scerena, and others, knowingly assisted Lisa in crafting a false narrative about Plaintiff sexually abusing N.B. *Compl.* ¶¶51–58.

c. Plaintiff alleges ASA Irvin became involved after the DCFS investigation was underway. Plaintiff alleges that ASA Irvin advised other Defendants that if DCFS issued a finding indicating abuse, she would recommend criminal charges be pursued. *Compl.* ¶¶67-68.

d. On February 18, 2020, ASA Irvin charged Plaintiff with two counts of predatory sexual assault of a child and one count of aggravated criminal sexual abuse. *Compl.* ¶¶69-70.

e. At the bench trial, in September 2021, Warren and Lisa testified, and Judge Schafer found Plaintiff guilty and sentenced Plaintiff to six years in prison. *Compl.* ¶¶72-77.

f. In 2023, the Illinois Appellate Court reversed the bench trial's holding. *Compl.* ¶80.

g. Following the reversal, the Illinois Supreme Court denied the WCSAO's petition for leave to appeal on September 27, 2023. *Compl.* ¶¶81-82.

---

[2] The WCSAO Defendants adopt all of the facts also set forth in Defendants' Grundy and Garnett motion to dismiss and/or memorandum in support thereof (*Dkt.* [50] pgs. 3-5), as well as, Defendants Brown and Scerena motion to dismiss and memorandum who are also State employees and/or officers. (*Dkt.* [43] pgs. 3-8).

h. On December 7, 2023, the appellate court issued the mandate. *Compl.* ¶ 83.

Plaintiff commenced this civil action on December 8, 2025.[3] (*Dkt.* [3]). Plaintiff's Complaint consists of twelve counts alleging claims or causes of action under 42 U.S.C. §1983 and state law torts arising out of the criminal prosecution as follows:

i. Count I (against the individual Police Officer Defendants, Irvin, Blue, Eytalis, DCFS Defendants, and Prosecutor Defendants) alleging denial of due process due to fabrication of evidence under § 1983;
ii. Count II (against, *inter alia*, Police Officer Defendants, Prosecutor Defendants, and DCFS Defendants) alleging a § 1983 claim under *Brady v. Maryland*;
iii. Count III (against, *inter alia*, Police Officer Defendants, DCFS Defendants, Blue, and Irvin) alleging federal malicious prosecution and unlawful detention under § 1983;
iv. Count IV (against, *inter alia*, Police Officer Defendants, DCFS Defendants, Blue, Prosecutor Defendants, Eytalis, Schafer, and Unknown Co-Conspirators) alleging conspiracy to violate constitutional rights under § 1983;
v. Count V (against, *inter alia*, Police Officer Defendants, Prosecutor Defendants, Eytalis, DCFS Defendants, and Unknown Individuals) alleging "failure to intervene" under §1983;
vi. Count VI (against, *inter alia*, All Individual Defendants including Officers, Prosecutors, Eytalis, DCFS Defendants, and Blue) alleging malicious prosecution under state law;
vii. Count VII (against, *inter alia*, All Defendants and Unknown Co-Conspirators) alleging civil conspiracy under state law;
viii. Count VIII (against, *inter alia*, Individual Defendants) alleging intentional infliction of emotional distress under state law;
ix. Count IX (against, *inter alia*, All Defendants) alleging willful and wanton conduct under state law;
x. Count X (against, *inter alia*, Blue, Warren, Grundy, Eytalis, Irvin, and DCFS Defendants) alleging parental alienation under state law;
xi. Count XI (against, *inter alia*, City of Marion) alleging a state law claim entitled "respondeat superior"; and,
xii. Count XII (against, *inter alia*, City of Marion, County of Williamson) alleging a state law claim for "indemnification."

---

[3] Plaintiff initially filed on December 6, but the First Amended Complaint quickly followed. (*Dkt.* [1]).

### III.     ARGUMENT

**A.     Standard of Review**

Federal courts lack subject matter jurisdiction in actions brought against the State and/or state actors, pursuant to the doctrine of sovereign immunity. *Rodriguez v. Cook County, Illinois* 664 F.3d 627, 631-32 (7th Cir. 2011) (State's Attorneys are state employees who can only be sued in the Illinois Court of Claims); *see also*, *Simpson v. Meijer, Inc.*, 2013 WL 3834641 *2-4 (N.D. Ill. 2013) (State's Attorneys acting in their official capacity are considered arms of the state and are not subject to claims brought under §1983.)

A motion to dismiss for lack of subject matter jurisdiction is considered under Rule 12(b)(1). *St. John's United Church of Christ v. City of Chicago*, 582 F.3d 625, 616 (7th Cir. 2007). Rule 12(b)(1) motions differ from Rule 12(b)(6) motions only in that the court is not limited to and may properly look beyond the jurisdictional allegations of a complaint and view whatever evidence has been submitted on the issue of whether subject matter jurisdiction exists. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993); *Whitmore v. Alvarez*, 2013 WL 995770 *1 (N.D. Ill. 2013). Plaintiff bears the burden of proving that the jurisdictional requirements are met to survive a Rule 12(b)(1) motion. *United Phosphorous, Ltd. v. Angus Chem. Co*. 322 F.3d 942, 946 (7th Cir. 2003).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests" and the allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must do more than plead facts that are consistent with a defendant's liability, as bare assertions show only the possibility, not the plausibility, of his/her right to relief. *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009). This tenet is not applicable to legal conclusions, which should be disregarded. *Id.*; *see also*, *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (legal conclusions and conclusory statements found in the complaint are to be ignored.)

**B.     All of Plaintiff's Claims Against ASA Irvin are Subject to Sovereign Immunity and Dismissal.**

As noted above, state actors, such as ASA Irvin, are not 'persons' subject to §1983 liability. *Simpson*, 2013 WL 3834641 *2-4. Plaintiff seeks to avoid Rule 12(b)(1) dismissal of his federal claims against ASA Irvin under the doctrine of sovereign immunity, *inter alia*, by claiming that he brings suit against her in her "individual" and not official capacity. *Compl.* ¶26. This effort falls short, particularly, when in that very same paragraph, Plaintiff alleges that ASA Irvin was acting under color of law and in the scope of her employment. Labels are not factual allegations, and the Court must look to the underlying function being performed by the State's Attorney when determining whether suit is brought in an official or individual capacity, and whether its an action against the State.

The basic facts here, as set out in this pleading, lead to only one conclusion. ASA Irvin in interviewing and evaluating N.B., her primary witness, and the evidence gathered and/or provided by Sgt. Warren, Marion PD, and/or DCFS were all precursor acts to determine whether to initiate or forego charges. While Plaintiff frames the interview of N.B. as "feeding" and "coaching" her to repeat the false narrative constructed by Lisa and other defendants, those conclusory statements fail to remove Irvin's acts out of the prosecutorial realm for which ASA Irvin is entitled to sovereign immunity. Only prosecutors can initiate charges, and that decision is intimately associated with the judicial phase of the criminal process. *Accord, Imbler v. Pachtman*, 424 U.S. 409, 429 (1976). Regardless of Plaintiff's efforts at labeling ASA Irvin's conduct as "investigatory," this conclusion does not work to save Plaintiff's federal claims from dismissal under Rule 12(b)(1).

Plaintiff's state law torts are also subject to dismissal pursuant to sovereign immunity. The Illinois Constitution of 1970 abolished the doctrine of sovereign immunity except "as the General Assembly may provide by law." Ill. Const. 1970, art. XIII, § 4. In turn, the legislature enacted the State Lawsuit Immunity Act (the Immunity Act) in 1972, which now provides in pertinent part that the State "shall not be made a defendant or party in any court except "as provided in the Court of Claims Act." §745 ILCS 5/1 *et seq.; see also,* §5 ILCS 350/0.01 *et seq.*, the State Employee Indemnification Act which defines the term "State" to mean the State of Illinois "or any other agency or instrumentality of the State." *Id*. § 1(a); *accord, Bianchi v. McQueen*, 2016 IL App (2d) 150646, ¶ 34 ("The Illinois Supreme Court has held that State's Attorneys and ASAs are state officials."). With certain exceptions not relevant here, Section 8(a) of the Court of Claims Act states that the Court of Claims has exclusive jurisdiction to hear and determine claims against the State "founded upon any law." §705 ILCS 505/8(a).

Plaintiff's entire action against ASA Irvin is one against the State. *See*, *Parmer v. Madigan*, 2018 IL 122265 ¶ 21, 106 N.E.3d 1004, 1009-10 (2018); *see also Smith v. Jones*, 113 Ill.2d 126, 131 (1986) ("official acts of State officers are in effect acts of the State itself."). Moreover, "the determination of whether an action is one against the State depends upon the issues involved and the relief sought and not simply the formal identification of the parties." *Parmer* at ¶22. For example, where a plaintiff alleges that a state officer's conduct violates statutory or constitutional law <u>or</u> is in <u>excess of his or her authority</u>, such conduct strips the officer of his or her official status, and so the principles of sovereign immunity would not be offended. *Id.* Here, while Plaintiff claims that ASA Irvin is acting outside of her public duties, all of the conduct alleged to be violative of Plaintiff's rights are clearly within the scope of her official duties as a prosecutor.

As such, ASA Irvin is entitled to sovereign immunity, and dismissal is warranted under Rule 12(b)(1) for lack of subject matter jurisdiction.

**C.     ASA Irvin is Entitled to Absolute Prosecutorial Immunity Under Both Federal and State Law.**

As noted *supra*, the factual conduct attributed to ASA Irvin all amount to actions solely undertaken in the course and scope of her position as a prosecutor for the WCSAO, to wit: reviewing evidence, interviewing and evaluating witnesses, and initiating charges. *Compl*. ¶¶67-70. *See, Hampton v. City of Chicago*, 349 F. Supp. 2d 1075, 1081 (N.D. Ill. 2004); *see also*, *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (A prosecutor is shielded by absolute immunity when acting as an advocate for the State.) Courts have adopted a functional approach to determine whether a prosecutor's actions qualify for absolute immunity. *Buckley*, 509 U.S. 259, 269, 113 S. Ct. 2606, 2613, 125 L. Ed. 2d 209 (1993) (instructing courts to look to the nature of the function performed, not the identity of the actor who performed it). In particular, *Buckley* differentiated between acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial (protected by immunity) and acts that serve an investigative function normally performed by a detective or police officer (not protected by immunity). *Buckley*, 509 U.S. 259, 269, 113 S. Ct. 2606, 2613, 125 L. Ed. 2d 209 (1993). In taking a careful look at the different ways that Plaintiff suggests that ASA Irvin should be stripped of her absolute prosecutorial immunity, Plaintiff's theory of individual liability collapses.

    **i.     Fabrication of Evidence Claim**

The first attempt by Plaintiff of trying to strip ASA Irvin of her immunity is the conclusory statement that ASA Irvin "fed" N.B. the false narrative of abuse previously constructed by Lisa, Sgt. Warren, and DCFS workers, *inter alia*, thereby 'coaching' her to repeat same for ensuing court proceedings. *Compl.* ¶70. These are exactly the type of prosecutorial acts that are clearly protected

by the Supreme Court in *Buckley*. *Buckley,* 509 U.S. at 273. There the Court explained that prosecutors are entitled to absolute immunity for their "professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury." *See also, Hunt v. Jaglowski,* 926 F. 2d 689 (7th Cir. 1991) (finding prosecutors are absolutely immune from taking statements in connection with initiating charges); *Briscoe v. LaHue,* 663 F. 2d 713, 721-22 (7th Cir. 1981) (finding prosecutors were entitled to absolute immunity for knowingly using perjured testimony at several judicial proceedings).

ASA Irvin decision to interview and meet with N.B. before filing charges was an exercise of her prosecutorial discretion. Her decision to do this in order to make a professional evaluation as to N.B.'s credibility and ability to recall and relate prior statements of sexual abuse to others before potentially putting N.B. on a witness stand is clearly within her prosecutorial purview. ASA Irvin also would have had to meet with N.B. and review the evidence and statements taken by Marion PD and DCFS to determine whether she there was probable cause to initiate charges, and more specifically, <u>what</u> charges should be brought. ASA Irvin is not 'feeding' N.B. a false narrative by simply asking her to relate prior statements. Per the complaint, ASA Irvin does not even get involved in this investigation and prosecution until several months into it. A prosecutor cannot act in a vacuum and needs information to perform her job. None of the facts alleged by Plaintiff at all pushes the needle from anywhere other than ASA Irvin just doing her job and evaluating her witness. *Cf. Fields v. Wharrie ("Fields II")*, 740 F.3d 1107, 1111–13 (7th Cir. 2014) (prosecutor solicited false testimony from Hawkins to identify plaintiff as the shooter with a promise to have Hawking removed from death row.)

To the extent Plaintiff asserts ASA Irvin is liable for fabrication of evidence, courts have repeatedly held that even intentional use of false testimony at trial is protected, and this matter was

still in the evaluation and initiation stage. ASA Irvin's conduct squarely fits within the protection afforded by absolute prosecutorial immunity, and dismissal of all of the claims and torts against her warrant dismissal under Rule 12(b)(6).

### ii. Concealment of Exculpatory Evidence

The second attempt by Plaintiff of stripping ASA Irvin's immunity is the conclusory statement that ASA Irvin committed a *Brady* violation by concealing exculpatory evidence that N.B. told investigators that Plaintiff did not abuse her, that N.B. had a history of sexual abuse which made her more easily suggestible, and Defendants concealed their own misconduct. *Compl*. ¶¶96-98. Plaintiff alleges that this conduct went on both before and after Plaintiff's conviction. *Id*. None of these conclusory allegations at all support Plaintiff's theory that ASA Irvin is not entitled to absolute prosecutorial immunity.

The Supreme Court and the Seventh Circuit have made it clear that such concealment claims are barred by absolute immunity. *See e.g., Imbler,* 242 U.S. at 430-431. (holding that absolute prosecutorial immunity extends to a prosecutor who willfully suppresses exculpatory information). Furthermore, unsupported assertions that the government has suppressed evidence are insufficient to plead a sufficient *Brady* claim. *United States v. Driver,* 798 F.2d 248, 251 (7th Cir. 1986). Mere speculation by Plaintiff is not sufficient to establish that the government suppressed evidence or the alleged suppressed evidence is relevant under *Brady*. *See United States v. Nash,* 29 F. 3d 1195, 12102 (7th Cir. 1994); *United States v. Nolan,* 910 F. 2d 1553, 1558 (7th Cir. 1990). More to the point, it would be hard for ASA Irvin to conceal information of which Plaintiff had prior knowledge. Specifically, Plaintiff already learned of and knew about N.B.'s abuse history and cognitive challenges during the adoption process. *Compl.* ¶¶ 33-35.

As the Seventh Circuit emphasized in *Fields v. Wharrie ("Field I")*, 672 F.3d 505, 514 (7th Cir. 20120, *Brady* violations breach a defendant's trial rights and are, thus, "inherently prosecutorial." Courts have routinely dismissed *Brady* claims asserted against prosecutors on absolute prosecutorial immunity. *Wharrie ("Fields I")* at 526. Plaintiff's Complaint does not provide allegations made to support a plausible *Brady* claim against ASA Irvin to strip her of her absolute prosecutorial immunity, thus, dismissal is warranted.

**D.     Alternatively, ASA Irvin is Entitled to Qualified Immunity for Actions That Plaintiff Has Characterized as "Investigatory."**

"Prosecutorial immunity attaches to the failure to comply with disclosure obligations and the suppression of evidence, the initiation of a criminal prosecution, the evaluation and preparation of evidence collected by the police for presentation at trial, and court appearances to obtain search warrants." *Heidelberg v. Manias*, 503 F.Supp. 3d 758, 779–80 (C.D. Ill. 2020). This summary of some of a prosecutor's duties hits the mark as to why ASA Irvin is entitled to absolute prosecutorial immunity. Even if ASA Irvin's pre-charging interview with the complaining witness, N.B. and the evaluation of the evidence provided by Sgt. Warren and DCFS, could somehow be characterized as "investigative" rather than "prosecutorial," which ASA Irvin categorically denies, she would still be entitled to immunity, though it would only be qualified. Despite Plaintiff's conclusory allegation that ASA Irvin was "acting in an investigatory fashion," same is belied by the other facts actually outlined in the complaint against ASA Irvin, and qualified immunity would still result in dismissal as to ASA Irvin. *Compl.* ¶¶ 21, 70.

For a brief outline of some of the history provided in the pleading, one can flush out all of the ways that ASA Irvin was not involved in 'investigating' the sexual abuse claim. Starting at the beginning, ASA Irvin was not present when Lisa walked into the Marion Police Department to report that N.B. had been abused by her ex. *Compl.* ¶40. Nor was she present for any of the initial

interviews with Lisa and N.B. *Compl*. ¶¶42-46. There are no allegations that ASA Irvin was present when Lisa, Sgt. Warren, and DCFS Grundy initially "fed" a specific story of sexual contact "knowing" that there would be no physical evidence of sexual abuse. *Compl*. ¶¶48-49. ASA Irvin did not arrange for the forensic interview and was not present. *Compl.* ¶¶47, 51-52. She did not go out to the Plaintiff's home to take photographs and see if there was evidence there. *Compl.* ¶62. This 3-month investigative period described in the Complaint shows exactly why Plaintiff's single allegation that ASA Irvin was part of a conspiracy because of the N.B. interview and evaluation of DCFS records was not 'investigatory.' *Compl.* ¶70. *Cf.*, *Buckley v. Fitzsimmons*, 20 F.3d 789, 794 (7th Cir. 1994) ("*Buckley* II") (the Seventh Circuit ultimately held that the conduct of defendant prosecutors in *Buckley* did not violate plaintiff's rights.)

The facts of *Brown v. City of Chicago, et. al.*, 633 F.Supp.3d 1122 (N.D.Ill. 2022) are illustrative of the immunity issues here. In *Brown*, J. Pallmeyer found that the prosecutor had neither absolute nor qualified immunity. *Id*. at 1152-55. There, Cook County Felony Review ASA Whitehouse was assigned to assist Area 1 detectives with warrant applications and court orders. *Id*. at 1134. When assigned to a particular case, the ASA would go to Area 1 and review and evaluate available evidence, determine whether it was legally obtained, and make the ultimate decision on whether to charge or advise officers to continue an investigation. *Id*. at 1134. Once detectives had focused on Brown as their lead suspect in the arson, ASA Whitehouse allegedly Mirandized Brown and penned a handwritten statement in which Brown confessed to the arson. *Id*. at 1153. J. Pallmeyer held that ASA Whitehouse was not entitled to absolute immunity as Brown presented evidence that he never confessed and that the statement was written outside of Brown's presence. *Id*. at 1153. In holding that qualified immunity also did not afford any protection to ASA Whitehouse, the court found that there was no dispute that conspiring to frame a suspect through

evidence fabrication and coercive interrogation is clearly violative of an individual's rights. *Id*. at 1154-55. *Cf., Andrews v. Burge*, 660 F.Supp.2d 868, 878 (N.D.Ill. 2009) (no allegations that prosecutor departed from the common practice of taking a confession by asking questions of the suspect as if being examined in a courtroom.)

There are no allegations that ASA Irvin somehow forced or coerced a confession from Plaintiff, nor are there any allegations that ASA Irvin departed from the common practice of asking questions of a witness, here N.B., whether by asking her specific questions relative to the information already provided by Sgt. Warren or DCFS. As such, ASA Irvin would also be entitled to qualified immunity and prays that this Court enter a finding in her favor.

### E. Plaintiff Has Failed to Allege a Facially Plausible Conspiracy Claim

Plaintiff's §1983 conspiracy claim fails because "conspiracy is not an independent basis of liability in §1983 actions." *Smith v. Gomez*, 550 F. 3d 613, 617 (7th Cir. 2018). Plaintiff must demonstrate the following to establish a *prima facie* §1983 conspiracy claim: "(1) an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights, and (2) actual deprivation of those rights in the form of overt acts in furtherance of the agreement." *Sherer v. Balkema,* 840 F.2d 437, 442 (7th Cir. 1988). Plaintiff's Complaint fails to adequately plead facts that show any type of express or implied agreement between ASA Irvin and the other defendants.

To satisfy a conspiracy claim, the facts must adequately be alleged "to permit a reasonable jury to conclude the meeting of the minds had occurred and that parties had an understanding to achieve the conspiracy's objectives." *Goldschmidt v. Patchett,* 686 F.2d 582, 585 (7th Cir. 1982). The only facts Plaintiff alleges in this regard is that "Defendant Warren consulted with Defendant Irvin about approving sexual assault charges against Plaintiff. Defendant Irvin told Defendants Warren, Grundy, and Garnett that if DCFS made a finding that sexual abuse was indicated, she

would persuade the assistant state's attorney to approve criminal charges against Plaintiff. *Compl.* ¶67. By Plaintiff's own admission, ASA Irvin's conversations with the other defendants were within the purview of her role as a prosecutor. Plaintiff has not sufficiently alleged facts that show ASA Irvin came to any type of agreement with the other Defendants in order to charge Plaintiff. Plaintiff's allegations that "All of the individual Defendants, and other co-conspirators, known and not yet known to Plaintiff, reached an agreement amongst themselves to deprive Plaintiff of material exculpatory evidence and information to which he was lawfully entitled and to conceal their misconduct from Plaintiff, all in violation of Plaintiff's constitutional rights, as described above" are conclusory as to whether an agreement was actually made, when, and the details or contours of that agreement. *Compl.* ¶109. Furthermore, ASA Irvin's conduct was well within her scope as a prosecutor as she conducted interviews of the alleged victim to determine whether Plaintiff would be charged, and if so, what charges would be brought.

More to the point, Plaintiff's allegations that ASA Irvin was part of a conspiracy against her do not defeat her absolute immunity. In *Imbler*, plaintiff similarly alleged a conspiracy between the prosecutor and police, causing him to be wrongfully charged and convicted through the use of false testimony and suppressing exculpatory evidence. *Imbler* at 416. The court in *Imbler* affirmed the dismissal of plaintiff's complaint pursuant to defendants' Rule 12(b)(6) motion, finding that despite plaintiff's "conspiracy" allegations, the prosecutor was afforded absolute immunity because his activities were intimately associated with the judicial phase of the criminal process. *Imbler* at 431.

**F.     Plaintiff Cannot State a Claim for Failure to Intervene Against ASA Irvin**

Public officials, such as ASA Irvin, are not responsible for correcting the misdeeds of other public officials and are not responsible to fix a wrong regardless if they know or should know of

the alleged misdeed. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). In an effort to evade that rule, Plaintiff purports to bring a §1983 failure to interview claim against "one or more of the individual Police Officer Defendants, the Defendant Prosecutors, Defendant Eytalis, DCFS Defendant and other unknown individuals, stood by without intervening to prevent the alleged constitutional violations, despite having an opportunity to do so". *Compl.* ¶116. Plaintiff's attempt to impose the conduct of other defendants vicariously on ASA Irvin fails as a matter of law. No cognizable failure to intervene claim exists against ASA Irvin. *See Gordon v. Devine,* 2008 U.S. Dist LEXIS 81234, *56 (N.D. Ill. 2008) (declining to expand the law recognizing a "failure to intervene" claim against assistant state's attorney and dismissing claims pursuant to Rule 12(b)(6)); *Andrews v. Burge,* 660 F. Supp. 2d 868, 875 N. 6 (N.D. Ill. 2009) (following *Gordon* and dismissing a failure to intervene claim against the State's Attorney pursuant to Rule 12(b)(6)).

The WCSAO is an independently elected State constitutional office. *See* Ill. Const., Art. VI, § 19. The Seventh Circuit established that the duty to intervene is founded on a law enforcement officer's duty as a peace officer. *Byrd v. Brishke,* 466 F. 2d, 11 (7th Cir. 1972). Under Illinois law, a State's Attorney do not include the duties of a peace officer. *See* Ill. Comp. Stat. 55 ILCS §5/3-9005. A prosecutor does not have a duty that requires a prosecutor to intervene in any police activity or perceived misdeed, thus, ASA Irvin is entitled to a dismissal of Count V.

**G.     ASA Irvin is Also Entitled to Prosecutorial Immunity On Plaintiff's State Torts.**

Although addressed above, ASA Irvin notes that she is also entitled to prosecutorial immunity on Plaintiff's state law torts brought against her. In Illinois, courts have mirrored *Imbler* and adopted a similar framework in affording state's attorney's absolute prosecutorial immunity. In *White v. City of Chicago*, 369 Ill. App. 3d 765 (1st Dist. 2006), the Illinois Appellate Court affirmed that absolute prosecutorial immunity applied to prosecutors. *See also, Aboufariss v. City*

*of Dekalb*, 305 Ill. App. 3d 1054, 713 N.E.2d 804 (1999) (county assistant state's attorney was protected by both absolute immunity and public official immunity). The Seventh Circuit has recognized the absolute immunity of prosecutors under Illinois law follows federal law. *Tobey v. Chibucos*, 890 F.3d 634, 649 (7th Cir. 2018).

Similar to the plaintiff in *White*, Plaintiff asserted a series of Illinois state law torts against ASA Irvin, to wit: malicious prosecution (Count VI), conspiracy (Count VII), intentional infliction of emotional distress (Count VIII), willful and wanton conduct (Count IX), and parental alienation (Count X). This Court should follow the precedent set out in *White* and dismiss these torts on the grounds of prosecutorial immunity. *White* at 775-77.

**H.     Plaintiff's Group Pleading On A Theory of Collective Responsibility is Insufficient to Place ASA Irvin On Notice of Plaintiff's Specific Claims Against Her.**

Plaintiff improperly relies on collective or group pleading, generically alleging that "Prosecutor Defendants" and "All Defendants" engaged in misconduct, without identifying what Irvin personally did, or when, or how. This is insufficient to state a claim, and is the type of collective pleading held to be impermissible as "[E]ach defendant is entitled to know what he or she did that is asserted to be wrongful." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013); *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015). "A complaint based on a theory of collective responsibility must be dismissed." *Id*.; *see also, Carter v. Dolan*, 2009 WL 1809917, at *3 (N.D. Ill. June 25, 2009) ("A complaint that refers to multiple officer defendants collectively as 'defendant officers' in each of the factual allegations does not provide each defendant officers with sufficient notice of wrongdoings alleged."); *see also*, *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) (a §1983 claim against a defendant in his individual capacity must allege personal involvement in the alleged constitutional injury.)

To survive a motion to dismiss, Plaintiff must allege specific facts showing that ASA Irvin personally caused or participated in the alleged constitutional violations. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). The allegations against ASA Irvin that she 'fed' a concocted story to N.B. during an initial interview, particularly in the absence of allegation that ASA Irvin knew the statement to be misleading or false, do not meet the pleading burden under Rule 8, *Iqbal*, and *Twombly*, 550 U.S. 544 (2007) as they are conclusory, vague, and speculative.

Additionally, Plaintiff's Complaint indiscriminately conflates the alleged actions of ASA Irvin, DCFS Defendants, Police Department Defendants, and other defendants. This conflation is problematic as Plaintiff alleges a conspiracy between various groups of defendants to violate his rights. As the Seventh Circuit discussed in *Redwood v. Dobson,* 476 F.3d 462, 466-67 (7th Cir. 2007), prosecutors do not handle cases in an "isolation tank" as they need to discuss with victims, witnesses, and police to make their case. *Redwood* at 466-67. As *Redwood* held, "If ordinary acts amount to 'conspiracy' to violate the Constitution, then immunities will be worthless and both witnesses and prosecutors would be induced to remain passive rather than enforce the criminal law vigorously." *Redwood* at 466-67.

In this case, the issue of immunity is important and should be resolved at the earliest possible stage. *See Buckley v. Fitzsimmons*, 20 F.3d 789, 793 (7th Cir. 1994). Unless Plaintiff agrees that ASA Irvin has correctly identified the specific conduct alleged of her in the Complaint, as opposed to the conduct of the other defendants Plaintiff seeks to hold ASA Irvin vicariously liable, the Complaint should be dismissed as insufficient under Fed. R. Civ. P. 8.

### I.     Plaintiff's State Torts Against ASA Irvin are Subject to Sovereign Immunity.

To the extent that this Court does not dismiss the state law torts against ASA Irvin for all of the reasons set forth *supra*, then the WCSAO Defendants ask that this Court decline to exercise jurisdiction over those counts. Under Illinois law, the Court of Claims has exclusive jurisdiction

over these claims as against ASA Irvin. This rule is binding upon federal courts, which may not hear state tort claims as pendant claims under 28 U.S.C. §1367 if those claims could not be brought in a state court of Illinois. *See, e.g.*, *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003) (noting that "state rules of [sovereign] immunity are binding in federal court with respect to state causes of action."). Thus, Plaintiff's state law claims against ASA Irvin (Counts VI-X) should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

**J.     Plaintiff Improperly Seeks to Impose Direct or Vicarious Liability on Williamson County Based on the Alleged Conduct of ASA Irvin**

While Plaintiff names the WCSAO as a Defendant in this suit, there are no substantive or *Monell* type allegations made against that Office – just a count identified as "Indemnification." *Compl*. Count XII. Rather, it appears that Plaintiff may have been under the mistaken impression that the WCSAO, as "an agency of the County of Williamson" is responsible for paying a judgment entered against ASA Irvin. *Compl.* ¶144. As noted above, the WCSAO is a state office and ASA Irvin State officer entitled to indemnification by the State. *See Horstman v. County of DuPage*, 284 F. Supp. 2d 1125, 1130-31 (N.D. Ill. 2003) (State's attorneys are independently elected state officials, not county officials, created under the judiciary article of the Illinois constitution.)

**K.     The Williamson County Defendants Adopt and Join in the Motions To Dismiss filed by other Co-Defendants.**

To the extent applicable, the WCSAO Defendants also move to join in and adopt facts, arguments and persuasive reasoning set forth in the other Co-Defendants' motions to dismiss, inclusive, particularly with respect to the sovereign immunity arguments made on behalf of the DCFS officials, Grundy, Garnett, Brown, and Screrena, as employees of that State office (*Dkts*. [34, 43, 49, 51]).

## V. CONCLUSION

For all of the foregoing reasons, the WCSAO Defendants respectfully pray that this Honorable Court find that the claims brought against them in Plaintiff's Complaint are subject to dismissal, pursuant to Rule 12(b)(1) and/or Rule 12(b)(6), or grant such other relief as this Court deems warranted, and for an Order termination them as parties to this action.

Respectfully Submitted,

**ASA IRVIN, WCSAO**

By: *s/ Julie M. Koerner*
Julie M. Koerner, #6204852
IFMK Law, Ltd.
650 Dundee Road, Suite 475
Northbrook, IL 60062
T: (847) 291-0200
E: jkoerner@ifmklaw.com

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID BLUE, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )    Case No. 2024-cv-2579-JPG |
| | ) |
| THOMAS WARREN, *et. al.*, | ) |
| | ) |
|       Defendants. | ) |

### **CERTIFICATE OF SERVICE**

      I certify that on April 22, 2025, I caused the foregoing, ***WCSAO Defendants' Motion to Dismiss and Supporting Memorandum*** to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification to the following registered participant(s):

Ashley B. Cohen - ashley@bonjeanlaw.com
Jennifer A. Bonjean - jennifer@bonjeanlaw.com
Joshua L. Morrison - josh@bonjeanlaw.com
***Attorneys for Plaintiff***

James G. Sotos - jsotos@jsotoslaw.com
Jeffrey R. Kivetz - jkivetz@jsotoslaw.com
Laura M. Ranum - lranum@jsotoslaw.com
***Attorneys for Defendants Warren & Morse***

Patrick J. Ruberry - ruberry@litchfieldcavo.com
***Attorney for Defendant City of Marion***

Lisa A. Cook - lisa.cook@ilag.gov
***Attorney for Defendant Shafer***

Charles Z. Vaughn - czvaughn@wmlaw.com
Brent L. Salsbury - blsalsbury@wmlaw.com
***Attorneys for Defendants Brown & Scerena***

Bridgett N. Fu – bfu@brinkerdoyen.com
***Attorney for Defendant Eytalis***

Bernard J. Slater, Jr. - Bernard.slater@ilag.gov
***Attorney for Defendants Grundy & Garnett***

                                                By:   *s/ Julie M. Koerner*
                                                        Julie M. Koerner, #6204852