*Blue v. Warren, et al.*
Case No.: 24-CV-2579

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| DAVID BLUE, | ) |
| | ) Case No.: 24-CV-2579 |
| Plaintiff, | ) |
| | ) Honorable Nancy J. Rosenstengel |
| v. | ) |
| | ) |
| THOMAS ("T.J.") WARREN, et al. | ) |
| | ) |
| Defendants. | ) JURY TRIAL DEMANDED |

**CITY OF MARION DEFENDANTS'
REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

I. **Plaintiff Fails to Put Defendant Officer Morse on Notice of Any Allegedly Wrongful Conduct Attributable to Him (Defendant Officer Morse)**

In the Defendant Officers' Motion to Dismiss, (Dkt. 51, "Motion"), Defendant Officer Morse moved to dismiss all counts for impermissibly alleging collective responsibility, (*id.* at 7–9), and Counts I–IV based on a lack of personal involvement, (*id.* at 9). In his Response to the Motion, (Dkt. 69, "Response"), Plaintiff counters that he pled enough allegations of personal misconduct to put Morse on notice of the claims against him. (*Id.* at 3–7.) The law dictates otherwise.

   a. **Plaintiff's improper allegations of collective responsibility warrant dismissal of all claims against Morse (All Counts).**

As a threshold matter, Plaintiff's theory of pleading appears to fundamentally misunderstand *Bank of America v. Knight*, which Plaintiff contends is inapplicable because that case involved fraud. 725 F.3d 815 (7th Cir. 2013). Per Plaintiff, Morse improperly relies on *Knight* to subject Plaintiff to a heightened pleading standard under Federal Rule of Civil Procedure 9 that does not impact him, since his claims arise under the more lenient Rule 8. (Dkt. 69, Resp. at 5–6.)

Plaintiff is simply wrong about *Knight*, where the Seventh Circuit held that a "complaint based on a theory of collective responsibility must be dismissed," "***even for allegations of conspiracy***," and not merely for torts like fraud that carry heightened pleading requirements. 725 F.3d at 818 (emphasis added). Relying on *Knight*, courts routinely dismiss claims subject to Rule 8, like Plaintiff's, based on improper collective responsibility allegations. *See Mohammed v. Naperville Cmty. Unit Sch. Dist. 203*, No. 19 C 6525, 2021 WL 428831, at *3 (N.D. Ill. Feb. 8, 2021) (*Knight* collective responsibility doctrine bars state law claims against eight defendants); *The Chamberlain Grp., Inc. v. Techtonic Indus. N. Am., Inc.*, No. 16 CV 06113, 2017 WL 4269005, at *3 (N.D. Ill. Sept. 26, 2017) (applying *Knight* to dismiss complaint governed by Rule 8 that told "us nothing about the individual actions of…the various…defendants").

1

Plaintiff's misread of pleading requirements seeps into his own authority, particularly his lynchpin case: *Engel v. Buchan,* where the Seventh Circuit found that allegations pled against two officers based on joint accusations of *specific* acts of suppression were sufficient. 710 F.3d 698, 710 (7th Cir. 2013). Here, on the other hand, Plaintiff either alleged specific misconduct solely against Defendant Officer Warren, then indiscernibly lumped Morse into vague and ambiguous tack-on allegations directed at the Defendant Officers, or he broadly pled boilerplate misconduct against Defendants generally—of which there are *twelve* different defendants. (*See* Dkt. 51, Mot. at 7–8 (laying out how Plaintiff's allegations manifest as against Morse).) Whereas specific suppression misconduct could be attributed to each of the two *Engel* officers, the FAC's only *specific* allegations of misconduct are directed at Warren. *Engel* is inapposite.

Next, Plaintiff's case of *Brooks v. Ross* actually demonstrates why dismissal is appropriate. 578 F.3d 574 (7th Cir. 2009). Relying on *Brooks*, Plaintiff states, "the same allegation explicitly directed at a group of defendants is sufficient to plead personal involvement after *Iqbal*, even if each defendant comprising the group is not named individually in each separate paragraph." (Dkt. 69, Resp. at 5.) But the court in *Brooks* held that such pleading *can* suffice, not that it *will* suffice in every case. In fact, *Brooks* affirmed a dismissal where the allegations were either "too vague to provide notice to defendants of the contours" of the claim or "merely a formulaic recitation of the cause of action and nothing more," which did "not put the defendants on notice of what exactly they might have done to violate [plaintiff]'s rights." 578 F.3d at 581–82.

Plaintiff also cites cases via parenthetical, some of which state boilerplate propositions and require no attention. A couple, however, warrant discussion. For his position that "disapproval of group pleading" is confined to fraud claims with heightened pleading standards, Plaintiff relies on *FDIC v. Saphir*, No. 10 C 7009, 2011 WL 3876918 (N.D. Ill. Sept. 1, 2011). (Dkt. 69, Resp.

2

at 5). But *Saphir* rejected the "group pleading" argument because the defendants "do not cite to any case law to support this [group pleading] argument," and then was left to its own research, which only unearthed fraud decisions. 2011 WL 3876918, at *8. Bad lawyering in *Saphir* that led to a ruling unapprised of the relevant law is of no precedential or persuasive value.

    Plaintiff also looks to *Hyung Seok Koh v. Graf*, No. 11-cv-02605, 2013 WL 5348326 (N.D. Ill. Sept. 24, 2013), a police case that discusses group pleading. (Dkt. 69, Resp. at 5.) The *Hyung* complaint specifically named all the defendant officers, pegged specific actions to each named defendant, and *also* alleged joint allegations. 2013 WL 5348326, at *4. Denying the officers' motion to dismiss, the court criticized the plaintiff's group pleading, but found that he had done enough via his specific allegations to survive the Rule 12(b)(6) stage. *Id.* at *5. Here, Plaintiff did not peg Morse by name to a *single* specific allegation of misconduct—a far cry from *Hyung*.

    Which brings us back to *Barnhouse v. City of Muncie*, 499 F. Supp. 3d 578 (S.D. Ind. 2020). (Dkt. 51, Mot. at 7–8.) Plaintiff misreads the *Barnhouse* dismissal as stemming from "the complaint contradict[ing] itself." (Dkt. 69, Resp. at 6–7.) Yet, *Barnhouse* dismissed five out of seven officers collectively pled as "Police Defendants" because that grouping failed to provide notice to those individual officers, specifically where the actual allegation of fabrication was explicitly attributed to two other officers who were not dismissed. 499 F. Supp. 3d at 588–89. That is essentially identical to this case. Plaintiff explicitly attributed fabrication allegations to Warren, and the sole specific act attributed to Morse is not misconduct; he is merely alleged to have reviewed DCFS records and interviewed individuals to see if the sexual abuse accusation could be corroborated. (Dkt. 3, FAC ¶ 63.) Nowhere else in the FAC is Morse mentioned by name. The reasoning of *Barnhouse* maps perfectly and recommends that Morse be dismissed.

3

Ultimately, Plaintiff did not plead sufficient allegations concerning Morse to give him notice of the misconduct attributable to him. As this Court found in *Herrington v. Bradford*, "[f]actual allegations related to [a defendant that] appear to be limited merely to a mention" of an instance of non-tortious conduct are "simply insufficient to plausibly state a claim." No. 3:20-CV-00938-NJR, 2021 WL 1208896, at *2 (S.D. Ill. Mar. 3, 2021) (Rosenstengel, J.). That is especially so where, as here, "the complaint contain[s] a detailed description of [the other defendant's] alleged acts." *Id*. As in *Herrington* and *Barnhouse*, Morse lacks notice, and he should be dismissed.

    **b. In the alternative, Plaintiff does not allege personal involvement, warranting dismissal of the federal claims against Morse (Counts I–IV).**

Rather than separately address Morse's personal involvement argument, which extends only to the federal claims, (Dkt. 51, Mot. at 9), Plaintiff stages it alongside collective responsibility. Per Plaintiff, *Colbert v. City of Chicago*, 851 F.3d 649 (7th Circ. 2017), is unhelpful because it arose at summary judgment. (Dkt. 69, Resp. at 7.) This baseless counterfactual ignores ample law relying on *Colbert* for Rule 12(b)(6) dismissals. *E.g., Smith v. City of Harvey*, No. 24-cv-03611, 2025 WL 437889, at *3 (N.D. Ill. Feb. 7, 2025) (dismiss malicious prosecution claim for "no allegation of any personal involvement," per *Colbert*); *Avitia v. City of Chicago*, No. 23 CV 15957, 2024 WL 2274101, at *4, 7 (N.D. Ill. May 20, 2024) (dismissing claims against multiple defendants based on the absence of allegations of personal involvement, per *Colbert*).

Beyond his misconstruction of *Colbert*, Plaintiff effectively ignores Morse's personal involvement argument. (*Compare* Dkt. 51, Mot. at 9 *with* Dkt. 69, Resp. at 7.) "Failure to respond to an argument—as [Plaintiff] ha[s] done here—results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Whether based on the merits or based on waiver, the federal claims against Morse should be dismissed for lack of personal involvement.

4

## II. Two of the Categories of Allegedly Suppressed *Brady* Evidence Are Nonactionable (Count II, Both Defendant Officers)

The Defendant Officers moved against two of Plaintiff's three theories of *Brady*[1] liability: (a) that they suppressed N.B.'s prior history of sexual abuse; and (b) that they suppressed evidence of their own alleged wrongdoing (i.e., that they had fabricated a false narrative). (Dkt. 51, Mot. at 10–12.) Plaintiff first argues that the Court can ignore these contentions because the Defendant Officers concede the third theory of liability, at least for Warren, is viable. Plaintiff then responds to the merits and qualified immunity. The Defendant Officers address each argument, in turn.

### a. The Court should dismiss discrete theories of *Brady* liability where they fail as a matter of law.

Plaintiff first implores the Court to "not parse" between different *Brady* theories since Count II was pled as one overarching claim, relying on two district level cases for support. (Dkt. 69, Resp. at 7–8 (citing *Fletcher v. Bogucki*, No. 20-cv-04768, 2021 WL 4477968 (N.D. Ill. Sep. 30, 2021); *Baker v. City of Chicago*, 483 F. Supp. 3d 543, 553 (N.D. Ill. 2020)).) Some Northern District of Illinois courts have (somewhat concerningly) declined to assess theories of liability couched within a broader claim during dispositive briefing where a portion of said claim survives or is not challenged. This despite published Northern District law permitting defendants to "file a Rule 12(b)(6) motion directed at allegations supporting a theory of liability," and not merely a "claim." *Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 780 (N.D. Ill. 2015).

The Seventh Circuit has long acknowledged the "district court" practice of issuing "orders eliminating various theories of liability" before "eventually [adjudicating] summary judgment" motions concerning what theories remain. *L.A.P.D., Inc. v. Gen. Elec. Corp.*, 132 F.3d 402, 403 (7th Cir. 1997). And the court recently endorsed assessments of distinct *Brady* theories. In *Moran*

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

*v. Calumet City*, which postdates *Fletcher* and *Baker*, the Seventh Circuit separately evaluated several alleged *Brady* violations to determine if each "basket" of purportedly suppressed evidence could survive dispositive briefing. 54 F.4th 483, 493–94 (7th Cir. 2022). The court took the same approach in *Anderson v. City of Rockford*. 932 F.3d 494, 503–12 (7th Cir. 2019).

To that end, courts routinely dismiss distinct theories couched within larger claims where it is clear that said theories cannot avail as a matter of law. *E.g., Necheles v. Bd. of Educ. of Dwight Twp. High Sch. Dist. #230*, No. 19-cv-1381-JES-JEH, 2020 WL 1905967, at *5–6 (C.D. Ill. Apr. 17, 2020) (dismissing three theories of negligence liability to "trim[] down" the claim to just two theories moving forward); *Heuberger v. Smith*, No. 3:16-CV-386 JD, 2019 WL 3030312, at *6 (N.D. Ind. Jan. 4, 2019) (noting that "the Court dismissed one of the complaint's two theories of liability," distinct from the complaint's "four claims," upon "Defendants' motion to dismiss"); *Baskins v. Gilmore*, No. 17 C 07566, 2018 WL 4699847, at *3–9 (N.D. Ill. Sept. 30, 2018) (dismissing a suite of *Monell*[2] theories of liability via Rule 12(b)(6) but permitting two of the *Monell* theories to proceed). Even *Fletcher*, Plaintiff's primary case, conceded that "considering the viability of individual theories supporting a single claim may serve to narrow issues for discovery and trial." 2021 WL 447968, at *4.

Here, where two of Plaintiff's three *Brady* theories are unambiguously barred as a matter of law (as discussed next), the Court should follow the common practice of assessing the Defendant Officers' good faith challenges to the two unavailing theories on their merits.

### b. Plaintiff concedes that he knew of N.B.'s sexual abuse history.

Regarding the Defendant Officers' challenge to Plaintiff's first *Brady* theory—that they could not have suppressed N.B.'s history of sexual abuse, since Plaintiff was aware of this history—

---

[2] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

Plaintiff does not contest the officers' recitation of the law: that evidence known to a criminal defendant cannot be suppressed under *Brady*. (Dkt. 51, Mot. at 10–11.) Rather, Plaintiff solely argues that because his FAC does not use the magic words, "Plaintiff was aware of N.B. sexual abuse history," such awareness cannot be imputed to him at the Rule 12(b)(6) stage. (*See* Dkt. 69, Resp. at 9–11.) This despite Plaintiff's allegations that his then-wife "frequently" discussed N.B.'s prior sexual abuse and succeeded in securing DCFS subsidies for the family based on this history, which abuse Plaintiff lays out in *exacting* detail. (Dkt. 3, FAC ¶¶ 34–35.)

"It is simply unreasonable to infer" that Plaintiff's allegations do anything but concede that he knew of his daughter's history of abuse. *Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633, 644 (N.D. Ill. 2022). Plaintiff is only entitled to "reasonable inferences." *Bucks v. Mr. Bults, Inc.*, 218 F. Supp. 3d 776, 778 (S.D. Ill. 2016). The Court "**need not accept 'unreasonable inferences** or unwarranted deductions of fact.'" *Naperville Smart Meter Awareness v. City of Naperville*, No. 11 C 9299, 2013 WL 1196580, at *10 (N.D. Ill. Mar. 22, 2013) (quoting *Mid-Am. Reg'l 7 Bargaining Ass'n v. Will Cnty. Carpenters Dist. Coun.*, 675 F.2d 881, 883 (7th Cir. 1982)) (emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009) (courts must apply their "common sense" when assessing whether allegations render a claim plausible).

Thus, it is manifestly unreasonable to infer that Plaintiff was unaware of his child's history of sexual abuse. As such, any alleged suppression of that information is nonactionable under *Brady*.

   c. **The Seventh Circuit forecloses *Brady* claims broadly alleging suppression of officers' own misconduct.**

Plaintiff's other challenged suppression theory—that the Defendant Officers violated *Brady* by suppressing their own misconduct—is not viable, no matter how strenuously Plaintiff wishes it were otherwise. The Seventh Circuit has emphasized that *Brady* does not compel officers to disclose the fact of their own (alleged) malfeasance. Plaintiff takes issue with *Saunders-El v.*

*Rohde*, claiming it does not stand for this proposition—or if it does, it is merely dicta. 778 F.3d 556 (7th Cir. 2015). Here, verbatim, is what *Saunders-El* has to say:

> In the end, [the plaintiff] seeks to charge the officers with a *Brady* violation for keeping quiet about their wrongdoing, not for failing to disclose any existing piece of *evidence* to the prosecution. But our case law makes clear that *Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations….

*Id.* at 562.

This flows from a consistent line of Seventh Circuit caselaw holding, without equivocation, that *Brady* does not create a double-dipping avenue of tort liability where officers suppress their own misdeed; rather, it is the misdeed itself that is actionable at law. In 2006, the Court of Appeals "determined that *Brady* cannot 'serve as the basis of a cause of action against police officers for failing to disclose the circumstances surrounding a coerced confession to a prosecutor.'" *Id.* (quoting *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1029 (7th Cir. 2006)). The next year, the court "upheld the dismissal of a *Brady* claim premised on an argument 'that an officer is suppressing evidence of the truth by making a false statement to a prosecutor,'" as the Seventh Circuit "'ha[d] already foreclosed this extension' of *Brady*." *Saunders-El*, 778 F.3d at 562 (quoting *Harris v. Kuba*, 486 F.3d 1010, 1017 (7th Cir. 2007)).

In response, Plaintiff badly misreads three cases as standing for the opposite proposition, "that police officers who have failed to disclose and/or lied about their misdeeds can be held liable for *Brady* violations." (Dkt. 69, Resp. at 11 (citing *Avery v. City of Milwaukee*, 847 F.3d 433 (7th Cir. 2017); *Engel*, 710 F.3d at 710; *Manning v. Miller*, 355 F.3d 1028 (7th Cir. 2004)).)

To begin, Plaintiff misses the key point of *Avery*: that there is a material difference between disclosing *evidence of* fabricated witness statements and disclosing the *fact of* the officer's actionable fabrication itself. Specifically, *Avery* held that the plaintiff could bring a *Brady* claim

8

for the officers' failure to disclose the circumstances that led to allegedly fabricated statements—namely, promises of benefits in exchange for testimony—but it expressly barred the plaintiff from asserting a *Brady* theory that the officers suppressed their own misdeed of fabricating the statements. 847 F.3d at 443–44. In other words, *Avery* underlines the Defendant Officers' point: *Brady* requires disclosure of *evidence*.

Neither *Engel* nor *Manning* fare any better for Plaintiff. The *Brady* claim in *Manning*, just like *Avery*, arose out of the suppression of evidence that could have *proven* a fabrication; it was not premised on the defendants' suppression of the fabrication itself. 355 F.3d at 1033. *Engel* was much the same. There, the Seventh Circuit allowed a *Brady* claim that alleged suppression of payment to a witness in exchange for testimony. *Engel*, 710 F.3d at 710.

All of which to say, *Brady* permits Plaintiff to bring a claim premised on the suppression of actual evidence, but does not permit Plaintiff to tack a suppression claim onto altogether separate theories of constitutional tort liability. *Saunders-El* and its forebears bar such practice outright, and Plaintiff's "own misdeeds" theory of *Brady* liability must be dismissed.

### d. Qualified immunity also defeats Plaintiff's theory of liability that the Defendant Officers can suppress their own alleged misconduct.[3]

Plaintiff's sole qualified immunity argument is that because *Brady* established suppression of exculpatory evidence as unconstitutional, and impeachment evidence was encompassed by *Brady* at least as early as 1985 via *United States v. Bagley*, 473 U.S. 667 (1985), immunity is *per se* unavailable to officers accused of violating *Brady*. (Dkt. 69, Resp. at 12–13.) This is wrong. The Seventh Circuit routinely finds officers qualifiedly immune from *Brady* claims. *E.g., Canen*

---

[3] As already noted, Plaintiff does not mount a *legal* opposition to the Defendant Officers' dismissal argument as to his theory that they suppressed information about N.B.'s history. Rather, he seeks a specific inference about his own knowledge that, if accepted, would render the Defendant Officers' caselaw inapposite. With the law undisputed, the Defendant Officers win outright—without qualified immunity—if the Court rejects Plaintiff's requested inference.

9

*v. Chapman*, 847 F.3d 407, 409 (7th Cir. 2017) (affirming dismissal of *Brady* claim brought against detective on qualified immunity grounds); *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) ("find[ing] that the defendant[ officers] are entitled to qualified immunity" for *Brady* claim); *Carvajal v. Dominguez*, 542 F.3d 561, 571 (7th Cir. 2008) (same).

The reason is obvious. "[T]he Supreme Court has stressed that the right at issue must be articulated at a meaningful level of particularity," as the "mere invocation of…general [*Brady*] principles is insufficient." *Canen*, 847 F.3d at 412. Rather, "settled authority" "must" resolve the issue at a level of granularity that takes into account "the right at issue" applied "to a factual circumstance similar to the one at hand." *Id.* (citation and internal quotation marks omitted).

Plaintiff supplies nothing of the sort and fails to meaningfully grapple with the myriad cases—*Saunders-El*; *Kuba*; *Sornberger*—that bar him from using *Brady* to sue for suppression of an officer's "own misconduct." The Defendant Officers submit that these cases settle the matter, but if the Court is inclined to find them in tension with *Avery*, *Engel*, and *Manning*, then, at the very least, the "own misconduct" theory "remains an open question." *Beaman*, 776 F.3d at 510. Thus, Plaintiff fails to carry his "burden of demonstrating the violation of a clearly established right," and immunity attaches. *Purtell v. Mason*, 527 F.3d 615, 621 (7th Cir. 2008).

### III. The Malicious Prosecution / Unlawful Detention Claim Can Only Proceed Under the Fourth Amendment (Count III, Both Defendant Officers)

Responding to the argument that the Court must dismiss Count III's Fourteenth Amendment malicious prosecution and unlawful detention claims, Plaintiff conflates three distinct claims, jumbles constitutional tort jurisprudence, and confuses the issues. Unlike with Count II's *Brady* claim, which alleges three theories of liability that arise within one claim, Count III consists of (at least) three wholly separate claims. The Defendant Officers do not challenge one of those claims: Fourth Amendment malicious prosecution / unlawful detention, laid out in *Manuel v.*

10

*Joliet*, 580 U.S. 357, 367 (2017), as arising where a plaintiff claims they were "detain[ed]…in the absence of probable cause," and expanded to encompass malicious prosecution when *Thompson v. Clark*, 596 U.S. 36, 42 (2022), interpreted *Manuel* as identifying such a tort.[4]

The challenged claims, on the other hand, are two distinct, but nonviable due process causes of action. The Defendant Officers address each Fourteenth Amendment claim, in turn.

### a. Fourteenth Amendment malicious prosecution has never been a pursuable claim for Illinois plaintiffs.

Before *Thompson*, the Seventh Circuit "held that a federal claim for malicious prosecution implicates (or at most *may* implicate) the right to due process, not the Fourth Amendment." *Katz-Crank v. Haskett*, 843 F.3d 641, 648 (7th Cir. 2016). Plaintiffs with state law claims governed by Indiana law could pursue this Fourteenth Amendment claim, as Indiana did not provide a state-level "remedy for malicious prosecution." *Id*. For suits arising in Illinois, however, said claim has *never* been actionable because "the Seventh Circuit has rejected malicious prosecution claims brought under the Fourteenth Amendment where state law provides an adequate remedy, as Illinois does." *Del Prete v. Village of Romeoville*, No. 17-cv-6145, 2025 WL 446260, at *16 (N.D. Ill. Feb. 10, 2025) (citing *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011)).

Post-*Thompson*, the Seventh Circuit now recognizes that Fourteenth Amendment malicious prosecution is unavailable to *anyone*—including Indiana plaintiffs. The court recently held that a plaintiff claiming he was "maliciously prosecuted[] cannot proceed under the Due Process Clause because," under "*Thompson*," such "allegations fall under the sole purview of the Fourth Amendment." *Marcure v. Lynn*, No. 24-2846, 2025 WL 1121633, at *2 (7th Cir. Apr. 16, 2025).

Thus, Plaintiff's Fourteenth Amendment malicious prosecution claim must be dismissed.

---

[4] The courts may well construe *Thompson* and *Manuel* as recognizing two different Fourth Amendment claims—one for malicious prosecution, one for unlawful detention—and Plaintiff is free to pursue this claim(s) under a split or combined iteration. The point is, the Fourth Amendment is where the action is, as *Thompson* and *Manuel* hold.

11

### b. The *McDonough* footnote does nothing to salvage Plaintiff's Fourteenth Amendment unlawful detention claim.

As Plaintiff concedes, the Seventh Circuit holds "that the Fourth Amendment is an exclusive avenue for challenging detention." (Dkt. 69, Resp. at 14 (citing *Lewis v. City of Chicago*, 914 F.3d 472, 480 (7th Cir. 2019)).) Thus, unless something undermined *Lewis*, Plaintiff agrees that Fourteenth Amendment unlawful detention is nonviable. Plaintiff seizes on a footnote from a Supreme Court decision issued six months after *Lewis*, which Plaintiff summarizes thus:

> [T]he Supreme Court since [*Lewis*] implied otherwise, assuming that a plaintiff may challenge the legality of detention under the due process clause, and noting [in a footnote] that "[c]ertain wrongs may affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands."

(Dkt. 69, Resp. at 14 (quoting *McDonough v. Smith*, 588 U.S. 109, 115 n.2 (2019)).) This is either a careless misread of *McDonough* or an outright, troubling misrepresentation.

*McDonough* had nothing whatsoever to do with the appropriate constitutional source for unlawful detention. The issue in *McDonough* was, as concerns § 1983 claims generally, at what point the statute of limitations accrues. *See Savory v. Cannon*, 947 F.3d 409, 414 (7th Cir. 2021) (construing *McDonough*). The vessel for this analysis was fabrication of evidence, and it was that specific claim for which the Court "express[ed] no view as to what other constitutional provisions (if any) might provide safeguards against the creation or use of fabricated evidence." *McDonough*, 588 U.S. at 115 n.2. Expounding on this hands-off approach, the Court noted—via parenthetical—that "'[c]ertain wrongs may affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands,'" *id.* (quoting *Soldal v. Cook County*, 506 U.S. 56, 70 (1992)), which quotation stemmed from *Soldal*, a 1992 case where the Court commented on how officers might have violated both the Fourth and Fourteenth Amendments when they tore a trailer from its foundation and towed it to another lot. 506 U.S. at 65–72.

Neither *Soldal*, *McDonough*, nor any Seventh Circuit decision since has construed either case to permit an unlawful detention claim under the Fourteenth Amendment. In fact, when the Court of Appeals had occasion to review *Lewis* and *McDonough* in a case that included an unlawful detention claim, it reaffirmed that *Lewis* restricts wrongful detention claims to "'the Fourth Amendment, not the Due Process Clause,'" *Camm v. Faith*, 937 F.3d 1096, 1105 (7th Cir. 2019) (quoting *Lewis*, 914 F.3d at 475), and discussed *McDonough* in a separate section dedicated to a *Brady* claim's timeliness. *Camm*, 937 F.3d at 1110 (discussing *McDonough*). Nowhere in *Camm*—or any decision—has the Seventh Circuit signaled that the irrelevant *McDonough* footnote impacts this circuit's bar on Fourteenth Amendment unlawful detention claims.

Ultimately, the law is clear. Unlawful detention "only sounds in the Fourth Amendment," such that its Fourteenth Amendment varietal must be dismissed. *Hernandez v. Guevara*, No. 23 CV 15375, 2024 WL 4299046, at *11 (N.D. Ill. Sept. 26, 2024) (citing *Manuel*, 580 U.S. at 365–69; *Patrick v. City of Chicago*, 974 F.3d 824, 834 (7th Cir. 2020); *Lewis*, 914 F.3d at 475).

### IV. Failure to Intervene Is Not Cognizable (Count V, Both Defendant Officers)

Defendant Officers acknowledge that the Court must apply Seventh Circuit law governing failure to intervene, and they stand on the arguments made in their Opening Brief. (Dkt. 51, Mot. at 13–17.)

### V. Plaintiff Cannot Save His "Willful and Wanton Conduct" Claim (Count IX, Both Defendant Officers)

In Plaintiff's Response to the DCFS Defendants' Motions to Dismiss, (Dkt. 65, "DCFS Response"), he argues that he has not pled a standalone willful and wanton conduct claim, which would warrant dismissal, but rather that he pled a breach of duties, which was done willfully and wantonly. (*Id.* at 26–27.) In other words, to prevent dismissal of his "willful and wanton" claim, Plaintiff asks the Court to construe it as negligence aggravated by willful and wanton conduct—

13

i.e., "aggravated negligence." To state that claim, Plaintiff must plead the elements of negligence *plus* either a deliberate intention to harm or a conscious disregard for his welfare. *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Directors,* 2012 IL 112479, ¶ 19 (Ill. 2012). He *clearly* has not done so. Rather, Plaintiff merely listed the elements of negligence and added the boilerplate language of "willful and wanton conduct" to the duty paragraph. (Dkt. 3, FAC ¶¶ 137–39.)

Plaintiff relies primarily on a Northern District of Illinois oral ruling in *Clay v. Noradin*, 23-CV-16798 (N.D. Ill. Oct. 11, 2024), a few pages of the transcript from which he attached to his DCFS Response and is located at Dkt. 65-1. The court in *Clay* found that there is no standalone claim for willful and wanton conduct, but it did find that there was a breach of other duties sufficiently outlined in that plaintiff's complaint. (Dkt 65-1, *Clay* Hr'g Tr. at 8:6–11.) But Plaintiff did not provide the *Clay* complaint, and he does not explain how the *Clay* allegations mirror his or support his efforts to plead aggravated negligence. A few pages of transcript from a Northern District oral ruling, without anything else, are unhelpful in the extreme.

*Jackson v. Wojcik*, a written order that shows its work, is more helpful. 23-CV-02027, 2024 WL 2209192 (N.D. Ill. Feb. 6, 2024). The court found that merely alleging a "duty to refrain from willful and wanton conduct" was too vague to plead the duty requirement of aggravated negligence. *Id.* at *6 (citation and internal quotation marks omitted). Plaintiff's FAC is a verbatim retread of the rejected language in *Jackson*—a list of the negligence elements plus the "willful and wanton" language. (Dkt. 3, FAC ¶¶ 137–39.) As *Jackson* shows, that is insufficient to state a cause of action, and Count IX should be dismissed.

**VI. There Is No Claim For Parental Alienation/Loss (Count X, Both Defendant Officers)**

Also, in his DCFS Response, Plaintiff argues that Illinois courts allow a claim for the loss of a minor child's society and companionship by a parent. Again, Plaintiff tries to amend on the fly,

this time jettisoning the FAC's term of "parental alienation" for what Plaintiff claims is the more appropriate title of "parental loss of a minor's society." (Dkt. 65, DCFS Resp. at 27–28.)

The stylings are ultimately irrelevant, as recent caselaw makes clear that such a claim is nonactionable. On May 22, 2025—two weeks *before* Plaintiff responded to the Defendant Officer's Motion, (*see generally* Dkt. 69, Resp.)—the Illinois Supreme Court explicitly held that it, in "defer[ence] to our legislative branch," the court has "declined to judicially create a tort cause of action for interference with the parent-child relationship." *Hulsh v. Hulsh*, 2025 IL 130931, ¶ 27 (Ill. 2025). *Hulsh* explicitly noted that *Dymek v. Nyquist*, 469 N.E.2d 659 (Ill. 1984)—Plaintiff's primary case that, some forty years ago, recognized a claim for parental loss—was "inconsistent with and implicitly overruled by *Doe [v. McKay*, 700 N.E.2d 1018 (Ill. 1998)]." 2025 IL 130931, ¶ 19. Thus, at least since *Doe* in 1998, and certainly since *Hulsh* in May 2025, Plaintiff's parental alienation/loss claim does not exist. Count X must be dismissed.

**VII.  Plaintiff's *Respondeat Superior* and Indemnification Claims Should Be Dismissed (Counts XI & XII, Defendant City of Marion).**

To the extent the claims against the Defendant Officers are dismissed, the derivative *respondeat superior* and indemnification claims must also be dismissed against the Defendant City of Marion.

## CONCLUSION

For the foregoing reasons, the City of Marion Defendants respectfully request this Court grant their motion to dismiss and for such further relief this Court deems just and proper.

Date: July 2, 2025                                    Respectfully submitted,

/s/ Jeffrey R. Kivetz                                 /s/ Patrick J. Ruberry
JEFFREY R. KIVETZ, Atty. No. 6308250                  PATRICK J. RUBERRY, Atty. No. 6188844
*One of the Attorneys for*                            *Attorney for Defendant City of Marion*
*Defendants Thomas Warren, Scott Morse*

James G. Sotos                                        Patrick J. Ruberry
Laura M. Ranum                                        **Litchfield Cavo LLP**
Jeffrey R. Kivetz                                     303 West Madison Street, Suite 300
Katherine E. Linehan                                  Chicago, IL 60606
THE SOTOS LAW FIRM, P.C.                              (312) 781-6675
141 W. Jackson Blvd., #1240A                          ruberry@litchfieldcavo.com
Chicago, IL 60604
(630) 735-3300
jkivetz@jsotoslaw.com

16

## CERTIFICATE OF SERVICE

      I hereby certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746 that on July 2, 2025, I electronically filed the foregoing **City of Marion Defendants' Reply in Support of Their Motion to Dismiss** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed on the below Service List:

*<u>Attorneys for Plaintiff:</u>*
Jennifer A. Bonjean
Ashley B. Cohen
Joshua L. Morrison
**Bonjean Law Group**
303 Van Brunt Street, 1st Floor
39 Grove Street
Brooklyn, NY 11231
(718) 875-1850
Fax: 718-230-0582
jennifer@bonjeanlaw.com
ashley@bonjeanlaw.com
josh@bonjeanlaw.com

*<u>Attorneys for Defendant City of Marion:</u>*
Patrick J. Ruberry
**Litchfield Cavo LLP**
303 West Madison Street, Suite 300
Chicago, IL 60606
(312) 781-6675
ruberry@litchfieldcavo.com

*<u>Attorneys for Defendant Lisa Irvin and Williamson County State's Attorney's Office:</u>*
Julie M. Koerner #6204852
Lance E. Neyland #6331171
IFMK Law, Ltd.
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
(847) 291-0200
jkoerner@ifmklaw.com
lneyland@ifmklaw.com

*<u>Attorneys for Defendant Michelle Schafer:</u>*
Lisa Cook #6298233
Assistant Attorney General
500 S. Second Street
Springfield, IL 62701
(217) 782-5819
lisa.cook@ilag.gov

*<u>Attorneys for Defendants Rose Grundy, Veretta Garnett:</u>*
Bernard James Slater Jr. #6220451
Assistant Attorney General
500 S. Second Street
Springfield, IL 62701
(773) 590-7875
bernard.slater@ilag.gov
gls@ilag.gov

*<u>Attorneys for Defendants Elaina Scerena, Leah Brown:</u>*
C. Zachary Vaughn #6288673
Brent L. Salsbury #6287279
**Wiedner & McAuliffe, Ltd.**
101 S. Hanley, Suite 1450
St. Louis, MO 63105
T: (314) 721-3400
F: (314) 725-5755
czvaughn@wmlaw.com
blsalsbury@wmlaw.com

*<u>Attorneys for Defendant Theresa Eytalis:</u>*
Bridgette N. Fu  #6317239
**Brinker & Doyen, LLP**
34 N. Meramee Ave., 5th Flr.
Clayton, MO 63105
T: (314) 863-6311
F: (314) 863-8197
bfu@brinkerdoyen.com

                           /s/ Jeffrey R. Kivetz
                           JEFFREY R. KIVETZ, Attorney No. 6308250
                           *One of the Attorneys for*
                           *Defendants Thomas Warren, Scott Morse*